[Crim. No. 7364.   Second Dist., Div. Three.   May 5, 1961.]

THE PEOPLE, Respondent, v. EDDIE TAYLOR, Appellant.

Thomas H. Greenwald, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

SHINN, P. J.—Eddie Taylor, the defendant, was charged with a violation of the Health and Safety Code, section 11500 (illegal possession of narcotics). He entered a plea of "not guilty" and denied the prior convictions as alleged. The matter was called for trial and he admitted the prior convictions. A jury trial was had and defendant was found guilty of the violation as charged. He appeals from the judgment rendered and the order denying his motion for new trial.

At the trial Police Officer Hanks testified as follows. On March 5, 1960, at about 9:30 a.m., he and his partner, Sergeant Grennan, members of the Narcotics Detail of the Los Angeles Police Department, went to the B and B Café located at 711 East Fifth Street in Los Angeles. The officer had been to the café on many prior occasions and knew the area to be one of a high frequency for narcotic violations. Upon entering the café, Officer Hanks saw defendant standing near the juke box; he had seen Taylor on another occasion approximately a week prior to March 5, 1960, at which time Taylor had told him that he had been convicted for possession of heroin and was currently on parole for that charge. After observing defendant in the café on March 5, Officer Hanks approached him, identifying himself as a police officer, and stated: "I hear you are dealing in stuff now, Eddie." Defendant denied the charge whereupon the officer asked him if he had any "stuff" on him at this time; defendant denied that he had any; the officer then asked "Do you mind if I look and see?"; Officer Hanks and defendant walked out the front door of the café and the officer searched defendant's clothing, finding nothing of significance in his pockets; he asked defendant to open his mouth which he did; the officer looked inside and saw nothing; he then asked defendant to lift up his tongue; at this request defendant turned away from the officer and ran back into the café and into the restroom at the rear of the café. Officer Hanks was about 2 feet behind him; when he caught up with defendant, Taylor was bending over the toilet; the officer pushed him away from the

toilet with sufficient violence to cause Taylor to fall to the floor; at the same time he grabbed defendant, placing one arm around his neck; they struggled on the floor of the restroom; the officer kept saying "Spit it out, Eddie, spit it out." Defendant responded, "I don't have any more. I don't have any more. It's over by the floor at the toilet." Looking in that direction the officer saw a large pink balloon fragment to the right of the commode. Officer Hanks' partner picked up the balloon fragment which contained a substance which was proved to be heroin. Officer Hanks testified the struggle ceased upon recovery of the balloon. On redirect the officer testified that at this time defendant stated: "It's not mine, it's Kamec's. . . . I paid Kamec $32 for it. I tried to get it down the toilet, but I couldn't." The officer denied threatening defendant with physical violence or striking him with handcuffs. He testified he used force to subdue him and also to keep him from swallowing any possible narcotics he had in his mouth.

During the cross-examination of the officer as to the circumstances in which the narcotic was discovered, the court stated: "If you are making a motion to suppress the evidence for lack of probable cause, that will be denied. Do you wish to go into the other item? MR. NUNNELLEY (defendant's attorney): "Yes, on the question of probable cause, I presume your Honor is basing your ruling on the fact of the defendant's consent? THE COURT: That is correct." The officer was questioned further and answered: "When he finally ended up on the floor I had my arm around his neck. Q. Did you just kind of choke him a little bit? A. Yes, sir. Q. The reason for that, I presume, was to subdue him, or for what purpose? A. Well, it was for a dual purpose, sir: To subdue him and also to keep him from swallowing any possible narcotics he had in his mouth. Q. You thought he had something in his mouth and you were trying to choke it out of him, in substance? A. That is correct. Q. When did you finally release him; was that after the officer had picked up something? A. Yes, sir. Q. And the defendant was putting up quite a struggle, was he, or seemed to be? A. I don't know. It's hard to gauge the degree of the struggle, sir. He was struggling some, yes. Q. Was he struck other than the fact that you were hanging onto him and choking him? A. No, I do not believe he was, sir. Q. And you say he told you, 'I don't have any more; it's over there'? A. Yes, sir. Q. Was that while you were still choking on him? A. Yes, sir. Q. You

didn't see anything fall out of his mouth at any time? A. No, I did not. Q. You don't know when it got out of his mouth, if it was in there? A. Only by assumption, sir; assumption and deduction." On redirect, he testified: "Q. As you hit the floor you had him around the throat? A. Yes, sir. Q. When he made the statement—and I forget the precise words—'It is over there. I don't have it any more,' at that time did you have your arm against his throat? A. Yes, sir. Q. While he was making that statement? A. Yes, sir. Q. And when he ceased struggling, did you release him and then place him under arrest? A. Yes, sir. Q. Did you at any time apply such pressure to the defendant's neck that he appeared having difficulty breathing? A. No, sir."

Defendant took the stand and testified in his own behalf. His version of the altercation was in conflict with that of Officer Hanks as to what occurred after he voluntarily accompanied the officer outside the café at the officer's request. He stated that he turned and ran because the officer threatened to whip him and hit him in the stomach; he ran into the café where the officer pursued him and crowded him into the restroom where he grabbed him around the neck and choked him; they fell to the floor; he at no time had narcotics in his mouth or on his person, nor was he bending over the toilet when the officer grabbed him; he never stated the narcotic was his or that he had purchased it from one Kamec, although he knew a man named Kamec who was in the café at the time and who had also been searched by the officers when they first arrived at the café.

When the heroin was offered in evidence, after it had been duly identified, defendant objected "on the basis of the argument heretofore made, and the authorities cited to your Honor." The basis of the objection was that the evidence had been unlawfully obtained. The objection was overruled.

Although the defendant testified that the choking forced nothing out of his mouth and that he had nothing in his mouth, Officer Hanks testified that defendant admitted having purchased the narcotic from one Kamec. The jury chose to believe the testimony of the officer. The only reasonable inference from the evidence was that the narcotic was dislodged during the struggle and that it was the struggle that caused its dislodgement. The officer frankly admitted that his purpose in choking the defendant was to capture whatever might be in his mouth. It is clear that without the application of

physical force the contraband would not have been dislodged and recovered by the officer.

The People seek to justify the use of force as a means of subduing the defendant. It is not a plausible explanation. Defendant was not being placed under arrest. He was not resisting arrest. He was not endeavoring to flee from the scene and there was not only no occasion for the use of force, but there was no intention to use it except as a means of forcing defendant to produce anything he might have in his mouth.

The sole question in the case is whether the narcotic that was choked from defendant's mouth by a police officer, and offered in evidence against defendant's objection, can be made the basis of a conviction of unlawful possession of a narcotic. We do not regard this as an open question. The facts in *People* v. *Martinez*, 130 Cal.App.2d 54 [278 P.2d 26], were that officers saw Martinez place a white package in his mouth, whereupon Officer Lucarelli placed a choke hold on defendant and ordered him to spit out what he had in his mouth. A struggle ensued. They fell to the ground and Martinez spat out a package which contained heroin. This court reversed the judgment upon the ground that the conviction was obtained in violation of the due process clause of the Fourteenth Amendment. There the People contended, as they do here, that the officers used only the force that was reasonably necessary to make an arrest. The facts in each case were to the contrary. They also contended, as they do here, a reasonable amount of choking for the recovery of evidence is permissible. That was the belief of Officer Hanks; he did not choke defendant severely enough to stop his breathing, but only hard enough to prevent him from swallowing anything.

In the view of the People, the question in each case would be whether the choking was more severe than was necessary to prevent the accused from swallowing an object. There can be no such test of illegality. When illegality is shown the law does not recognize degrees of illegality and inquire whether the conduct was grossly or only mildly illegal. No object that is forced from an accused by means of choking should ever be received in evidence. We have not changed our views in the matter and there is no necessity for repeating anything we said in the Martinez case.

The judgment is reversed and the superior court is directed

to dismiss the cause. The appeal from the order denying motion for new trial is dismissed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied May 25, 1961, and respondent's petition for a hearing by the Supreme Court was denied June 28, 1961.