[Crim. No. 8586.   Second Dist., Div. Two.   Apr. 3, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LEE BASS, JR., Defendant and Appellant.

Joseph H. Lewis for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment of conviction concluding a nonjury trial in which he was charged with possession of marijuana in violation of section 11530 of the Health and Safety Code; he had admitted a charge of five prior narcotic convictions.

Defendant, who did not testify, does not question the sufficiency of the evidence to support the judgment. In substance, the brief record before us indicates that at approximately noon on April 5, 1962, Officer Higgins and a fellow officer, the driver of their patrol car, observed defendant, who was known to Higgins as a user of narcotics, standing on a street corner. Higgins' partner stopped their patrol car and Higgins got out. He said to defendant, "Hi, Stack, I'd like to talk to you." Defendant said, "Not here," and the officer asked, "Shall we go to some other place?" Defendant replied, "Yeah," and then opened the right rear door of the police vehicle and started to enter it.

At this point, and while he was returning to the front seat of the patrol car, Higgins saw defendant put into his mouth what appeared to be a brown-wrapped cigarette. Higgins testified that when they had completed their entrance into the car, he told defendant that he was "under arrest" and ordered him to "spit it out, at which time he started to chew . . ." Higgins further testified that he then reached over the front seat and placed his left hand on defendant's neck in an attempt "to prevent him from swallowing, and again told him to spit it out, at which time he did." The object which came from defendant's mouth was a marijuana cigarette. When asked about the matter, defendant freely admitted "that he had just picked up that one little old joint to get a little high before he went to court." He said that he had "picked it up from a new stud down on Adams and Central. . . ."

Defendant's sole assignment of error consists of his contention that the officer's testimony as above quoted, with reference to the manner in which he had obtained the substance which defendant had placed in his mouth in an attempt to dispose of it, and thus to avoid prosecution for his crime, constituted as a matter of law "methods too close to the rack and the screw to permit of constitutional differentiation." (*Rochin* v. *California*, 342 U.S. 165, 172 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396].) In other words, defendant contends that the failure of Officer Higgins to remain passive and to allow defendant to complete his mastication and disposition of the contraband amounted to the exercise of "force so brutal and so offensive to human dignity in securing evidence from a suspect" that to permit it "would be to afford brutality the cloak of law." (*Rochin* v. *California, supra,* pp. 173 and 174.)

■■■■■ Before commenting upon the merits of appellant's legal theory, we think it might be well to note that defendant misstates the true effect of the evidence presented. He asserts that the officer "choked" him for as long as 20 seconds. The fact is, however, that there is absolutely nothing in the record tending to indicate that defendant was "choked" and nothing whatsoever to contradict the officer's testimony that defendant immediately spat out the cigarette in the manner above described. Defendant's error is manifest from a mere recital of his counsel's brief cross-examination of the officer upon the subject.

Defendant's attorney, apparently failing to recall the se-

quence of events as described by the officer on his direct examination, asked: "Q. How much time did you determine elapsed between the time that you placed your left hand on his neck, and you observed him making chewing motions or swallowing motions with his mouth?" The officer corrected this apparent misapprehension as to the sequence of events when he answered:

"A. I observed him making chewing motions with his mouth when I first seated myself back in the police car." The officer was then asked, "Q. How much time elapsed between that and when you placed your hand—you testified your left hand —on his throat? A. On his neck, yes. Q. On his neck? A. Yes. Q. How much time elapsed? A. Well, just long enough for me to tell him that he was under arrest and to spit it out, five, ten seconds, twenty seconds. Q. Was he making swallowing motions then with his mouth, or just chewing motions? A. It appeared to be chewing, and trying to swallow. Q. Did you state at this time whether or not he had actually swallowed the cigarette? A. No, he *was still chewing*. I couldn't state if he had." (Italics added.)

At no time was the officer asked any question designed to reveal how long he had held his hand on defendant's neck or the amount of force, if any, exerted. Hence, there is absolutely nothing in the record to discredit the officer's testimony that he merely "placed" his left hand on defendant's neck and again told him to spit it out *"at which time he did."*

In measuring the standards of due process discussed in *Rochin* v. *California, supra,* 342 U.S. 165, it is well to recall that this decision, which preceded the decision of our Supreme Court in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], involved a number of abuses of authority. In *Rochin* the actions of the officers were of such a nature as to bring into focus, *inter alia,* serious issues regarding the sanctity of the home, the right to privacy, unreasonable searches and seizures, and the prohibition against self-incrimination, in addition to the question of police brutality and the use of torture which were raised in that case.

Justice Frankfurter, speaking for the majority of the court in the *Rochin* case, was most careful to restrict the scope of the decision. The decision was concluded with the following language (p. 174): "We are not unmindful that hypothetical situations can be conjured up, *shading imperceptibly from the circumstances of this case and by gradations producing practical differences despite seemingly logical extensions.*

But the Constitution is 'intended to preserve practical and substantial rights, not to maintain theories.' . . . *On the facts of this case* the conviction of the petitioner has been obtained by methods that offend the Due Process Clause." (Italics added.)

■ The proposition that "[s]uspects have no constitutional right to destroy or dispose of evidence" (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]) does not contradict the proposition that a suspect may not be choked or abused in order to force evidence from his person (*People* v. *Brinson,* 191 Cal.App.2d 253, 256-257 [12 Cal.Rptr. 625]) or to prevent its disposal by swallowing. (*People* v. *Martinez,* 130 Cal. App.2d 54, 56-58 [278 P.2d 26].)

■ It is clear from a reading of these decisions, and similar cases which have been cited, that the courts were there concerned with condemning the excessive force exerted upon the individual rather than making the "mouth" a sacred orifice into which contraband may be placed and thereafter disposed of in leisurely fashion. Although we agree that physical evidence, like verbal confessions, may not be "tortured" from the lips of the accused, it does not follow that merely because a suspect has placed a substance behind his lips, he necessarily is entitled to cry "sanctuary" when the officer of the law, under appropriate circumstances, directs him to surrender it.

■ In *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557], it was held that a judgment need not be reversed on the basis of the *Rochin* case "because the narcotics were found only after the garage key was forcibly taken from [the defendant]. . . ." In explanation, the court stated: "The brutal and shocking force condemned in that case was not present here; *no more force was used than was reasonably necessary* to take the key from her hand." (Italics added.) (Also cf. *People* v. *Duroncelay,* 48 Cal.2d 766 [312 P.2d 600]; *Breithaupt* v. *Abram,* 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448]; *People* v. *Woods,* 139 Cal.App.2d 515 [293 P.2d 901]; *Blackford* v. *United States,* 247 F.2d 745.)

■ As was noted in *People* v. *Haeussler,* 41 Cal.2d 252, 259 [260 P.2d 8]: "[T]he *Rochin* decision does not rest upon the premise that the taking of evidence from the person of a defendant or by entry into his body is the decisive factor. Instead, the entire course of conduct was examined and found to be brutal and shocking." ■ In the instant case, the court unquestionably was entitled to believe that

there had been no "choking" of the appellant. (*People* v. *Smith,* 50 Cal.2d 149, 150-151 [323 P.2d 435]; also cf. *People* v. *Tahtinen,* 210 Cal.App.2d 755, 759 [26 Cal.Rptr. 864], hearing denied by the Supreme Court February 6, 1963; and *People* v. *Sanchez,* 189 Cal.App.2d 720, 727 [11 Cal.Rptr. 407].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.