47 Cal.Rptr. 338]

[Crim. No. 10262.   Second Dist., Div. Two.   Nov. 3, 1965.]

## THE PEOPLE, Plaintiff and Respondent, v. ARTURO MORA, Defendant and Appellant.

Garland H. Puckett, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gerald H. Genard, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered against him upon his conviction, after a nonjury trial, of possessing heroin in violation of section 11500 of the Health and Safety Code. The charge of a prior felony conviction was also found to be true. The assignments of error are that defendant's arrest was illegal and that the police used inappropriate methods in finding and seizing the contraband which was introduced into evidence by the state.

Appellant's principal argument centers around the contention that the police were indelicate in persuading him to expectorate two small balloons containing a modest supply of heroin which he had placed in temporary storage under his tongue.

Officer Fredrickson, a Los Angeles Police Officer assigned to the narcotic division, testified that at approximately 1 a.m. on October 3, 1961, while in the company of a fellow officer, he observed appellant and three other persons entering a certain apartment building. He recognized appellant and one of the others as persons known by him to be users of narcotics. When appellant and two of the others left the building about one-half hour later, they did not leave together but were

approximately 15 to 20 feet apart. Officer Fredrickson then testified to the following events:

"At that time, I approached the defendant. I identified myself as a police officer and asked him what his name was. He made a reply; and while making this reply, I noticed that he appeared to be holding his tongue in the lower portion of his mouth as if concealing something under it.

"At this time I asked him to open his mouth and lift up his tongue. He complied; and when he did this, I observed two balloons under his tongue of the type commonly to be used to package narcotics in.

"At this time I told him to spit them out, and he threw his head back and made a swallowing motion. I placed my hand to his throat and ordered him to spit them out again, at which time he did. I recovered—rather, my partner recovered the two balloons from the sidewalk where they fell. The defendant was placed under arrest."

Officer Fredrickson denied choking appellant and in response to the question: "How long after you placed your hand on his throat were the objects spit out of his mouth?", he replied, "I would say almost immediately."

*Legality of the Search and Seizure*

It is clear from the foregoing that appellant's contentions regarding the propriety of his arrest and the gathering of the contraband introduced into evidence against him are wholly without merit. Certainly there was nothing improper in the actions of the officers in stopping appellant under the circumstances.

When, in the course of their proper routine questioning, it became apparent that appellant was concealing something within his mouth, the officers would have been derelict in the performance of their duties if they had not extended the scope of the investigation to the extent of asking appellant to open his mouth. It is common knowledge that narcotics are frequently concealed within the mouth. (Cf. *People* v. *Acosta,* 213 Cal.App.2d 706, 710 [29 Cal.Rptr. 241]; *People* v. *Sanchez,* 189 Cal.App.2d 720, 725 [11 Cal.Rptr. 407].) Once appellant had opened his mouth, thereby revealing the presence of the contraband, it was entirely proper for the police to order him to spit it out.

It is true, of course, that choking or otherwise torturing a suspect has been condemned (*People* v. *Martinez,* 130 Cal. App.2d 54 [278 P.2d 26]; *Rochin* v. *California,* 342 U.S. 165

[72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]). But whether or not such methods were employed in a given case is a question of fact for the trier of the facts whose resolution, based upon substantial evidence, will not be disturbed upon appeal. (*People* v. *Tahtinen*, 210 Cal.App.2d 755, 758-760 [26 Cal.Rptr. 864]; *People* v. *Dickenson*, 210 Cal.App.2d 127, 136 [26 Cal.Rptr. 601]; *People* v. *Sanchez, supra,* 189 Cal.App.2d 720, 726-727.)

Certainly no question of self-incrimination is presented by the instant factual picture revealing the procedure by which the contraband was found and seized. The fact that the "real evidence" was located in appellant's mouth is immaterial. As this court stated in *People* v. *Bass,* 214 Cal.App.2d 742, 746 [29 Cal.Rptr. 778], in distinguishing cases involving torture and choking: "It is clear from a reading of these decisions, and similar cases which have been cited, that the courts were there concerned with condemning the excessive force exerted upon the individual rather than making the 'mouth' a sacred orifice into which contraband may be placed and thereafter disposed of in leisurely fashion. Although we agree that physical evidence, like verbal confessions, may not be 'tortured' from the lips of the accused, it does not follow that merely because a suspect has placed a substance behind his lips, he necessarily is entitled to cry 'sanctuary' when the officer of the law, under appropriate circumstances, directs him to surrender it."

### *Effect of Appellant's Statements re Source of His Narcotic Supply*

Although appellant has not specifically raised the issue, we have given consideration to the question whether or not there was reversible error in the admission into evidence of a statement made by appellant in response to an officer's inquiry as to where he had gotten the heroin which had been found in his mouth. The brief record reveals the following testimony of Officer Fredrickson:

"Q. Did you have any conversation with the defendant regarding the charges in this case? A. I did. Q. When and where did this take place? A. At the Police Building. Q. Was it shortly after the arrest? A. Yes, sir. Q. And who else was present besides you and the defendant, if anyone? A. My partner, Sgt. Virgin. Q. Were all statements made by the defendant made freely and voluntarily? A. They were. Q. Will you please relate that conversation. A. I showed him the balloons that we had recovered from his mouth and asked

him where he got them. At this time he stated, 'You probably won't believe me, but I found four grams of stuff in the MTA Depot at 6th and Main last Friday. I have shot up three grams. I had my last fix just about an hour before you got me.' Q. Is that about the substance of that conversation? A. Yes.''

A proper application of the rules enunciated in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], as amplified and interpreted in subsequent decisions, leads to the conclusion that the quoted record discloses no reversible error.

It will be remembered that Officer Fredrickson and his associate had observed appellant in the act of spitting out the balloons containing the contraband prior to the time of the later interrogation at the police station. It is obvious that the officers already were in possession of all the evidence needed, not only to justify appellant's arrest, but also to make out an incontrovertible case of unlawful possession of heroin. It is equally obvious that the ascertainment of the source of the narcotics would add nothing to their established case against the arrested party. So far as his guilt of possession was concerned, the *source* from which he obtained his supply was wholly immaterial.

Furthermore, in the course of his attempt to convince the trier of the fact that the officers had used improper force upon him, appellant made a full testimonial confession of the completely incriminating fact that he had held the two balloons of heroin in his mouth prior to the time that he so unwillingly expelled them, (Cf. *People* v. *Mathis,* 63 Cal.2d 416, 433 [46 Cal.Rptr. 785, 406 P.2d 65].)

The facts of this case are very similar to those presented in *People* v. *Sheridan,* 236 Cal.App.2d 667 [46 Cal.Rptr. 295], and *People* v. *Justiniano,* 236 Cal.App.2d 542 [46 Cal.Rptr. 335], in which we held that the receipt in evidence of statements by possessors of narcotics regarding the source thereof did not constitute prejudicial error in the circumstances there presented.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 12, 1966. Peters, J., was of the opinion that the petition should be granted.