[Crim. No. 6773.   First Dist., Div. One.   Jan. 15, 1969]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD C. SANDERS, Defendant and Appellant.

Gilbert T. Graham, under appointment by the Court of Appeal, Peter E. Sitkin, Arthur M. Schaffer, Steven J. Antler and Sidney M. Wolinsky for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy G. Laddish, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—This is another case dealing with the use of force in extracting evidence from the mouth of a narcotic suspect. The appeal is from an order denying defendant Sanders' motion for a new trial prior to his commitment for narcotic addiction. (See Pen. Code, § 1237, subd. 2, repealed since the filing of the instant notice of appeal.)

Two police officers were properly in a hotel room making a narcotic arrest. Responding to a knock, one of the officers opened the outside door. Framed in the doorway was defendant Sanders holding in his hand what appeared to be a balloon containing heroin. Officer Tedrow grabbed at, and hit, Sanders' hand. Sanders, however, was successful in placing an object in his mouth. The officer immediately went into a judo "choking technique." After about a minute Sanders indicated that he had "spit the balloon out" and the hold was loosened. On the floor, about two feet away, lay the balloon.

The officer testified: "[T]he choking technique is a very common judo hold. It is used in competing. . . . It is a very humane hold. It doesn't leave any marks." He said that in applying the technique you grab "inside the collar and across the back and grab the shirt down behind the back and you apply pressure inward with both hands. . . . This stops the person from swallowing, or eventually it stops the blood flow to the head, and then he passes out."

From the evidence it could reasonably be concluded that unknown to the officer at the time, when Sanders' hand was

struck, another balloon had loosened and landed on the floor of the room. Both balloons contained heroin.

Sanders' sole contention is that the force used by the police in extracting evidence from his mouth denied him due process of law. We have concluded that this contention is sound and that the judgment must be reversed.

A suspect has no constitutional right to destroy or dispose of evidence. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Bass,* 214 Cal.App.2d 742, 746 [29 Cal.Rptr. 778].) Nevertheless, it has repeatedly been held that choking a person in the recovery of evidence is violative of due process. (*People* v. *Parham,* 60 Cal.2d 378, 384 [33 Cal. Rptr. 497, 384 P.2d 1001]; *People* v. *Erickson,* 210 Cal.App. 2d 177, 182 [26 Cal.Rptr. 546]; *People* v. *Taylor,* 191 Cal. App.2d 817, 821 [13 Cal.Rptr. 73]; *People* v. *Brinson,* 191 Cal.App.2d 253, 256 [12 Cal.Rptr. 625]; *People* v. *Martinez,* 130 Cal.App.2d 54, 55-56 [278 P.2d 26].)

Referring to the last cited cases the court in *People* v. *Bass,* 214 Cal.App.2d 742, 746 [29 Cal.Rptr. 778], stated: ''It is clear from a reading of these decisions, and similar cases which have been cited, that the courts were there concerned with condemning the excssive force exerted upon the individual rather than making the 'mouth' a sacred orifice into which contraband may be placed and thereafter disposed of in leisurely fashion. Although we agree that physical evidence, like verbal confessions, may not be 'tortured' from the lips of the accused, it does not follow that merely because a suspect has placed a substance behind his lips, he necessarily is entitled to cry 'sanctuary' when the officer of the law, under appropriate circumstances, directs him to surrender it.''

Heeding the denunciation of undue force by choking, yet consistent with the principle expressed by *Bass, supra,* it has been held constitutionally inoffensive to obtain narcotic evidence by applying ''a hold below [the suspect's] chin which prevented him from swallowing anything he might have put in his mouth'' (*People* v. *Miller,* 248 Cal.App.2d 731, 733 [56 Cal.Rptr. 865], hrg. den.), by placing one's hand to the suspect's throat and ordering him ''to spit them out'' (*People* v. *Mora,* 238 Cal.App.2d 1, 3 [47 Cal.Rptr. 338], hrg. den.), and where the officer placed his ''hand back of defendant's neck and attempted to press his head forward and downward, to the end that the defendant could not swallow'' (*People* v. *Tahtinen,* 210 Cal.App.2d 755, 758 [26 Cal.Rptr. 864], hrg. den.), or ''did not choke defendant, rather . . .

attempted to prevent him from swallowing the evidence by holding his Adam's apple" (*People* v. *Dickenson*, 210 Cal. App.2d 127, 136 [26 Cal.Rptr. 601], hrg. den.), or "'placed his hand on [defendant's] throat [not] for the purpose of choking him . . . but to prevent him from swallowing'" (*People* v. *Sanchez*, 189 Cal.App.2d 720, 726 [11 Cal.Rptr. 407], hrg. den.).

The Attorney General contends that there was in fact no choking and that the force used was no more than was reasonably necessary to prevent destruction of the narcotic evidence. He insists, as suggested by the officer, that the term "choking technique" is a misnomer for a legitimate hold commonly used in judo competition.

We are unable to accept this contention. Although the officer concluded that his technique was a "very humane hold," it appears to us that any application of force to one's neck or throat calculated to, and which does, as stated by the officer, stop "the blood flow to the head, and then he passes out" constitutes choking or its equivalent.[1]

It is argued that it is unreasonable to allow an officer to use such force as is necessary to accomplish a felon's arrest (Pen. Code, § 835a; *People* v. *Cisneras*, 214 Cal.App.2d 62, 66-67 [29 Cal.Rptr. 146]), and yet deny to the officer a similar right to prevent destruction of the evidence of the felony. This contention assumes that *choking* is ordinarily necessary to prevent a suspect from swallowing narcotics—an assumption apparently unsupported by experience. And in any event, as an intermediate appellate court we must respect the clear directions of

---

[1]In the San Francisco Public Library we find a work (Bruce Tegner (1961), Judo for Fun, pp. 20-21—Library of Congress Catalog number 61-16761) wherein it is stated: "Chokes must not be attempted by any Judo player unless there is a Black Belt instructor present who is trained in the art of resuscitation (Kappo or Katsu). It is foolish and dangerous to attempt choking techniques without this safety precaution. Although there are some instructors who, unfortunately allow it, chokes against the windpipe should not be practiced. Chokes against the windpipe can be fatal. If *at any time* a windpipe choke is applied to you—you must submit immediately and refuse to practice with anyone who applies chokes of this nature. [¶] It requires more skill to apply Judo chokes properly, against the carotid artery. You must *not* apply even a *legal* choke without the presence of a Black Belt Instructor. The legal choke against the carotid artery can cause unconsciousness and there is danger of serious permanent injury or even fatality if the unconscious person is not revived within a matter of minutes."

This comment iterates what must be considered common knowledge— that any stoppage of the flow of blood to the head until one becomes unconscious is attended by serious danger.

*People* v. *Parham, supra,* 60 Cal.2d 378, 384, prohibiting the choking of a suspect under the circumstances of this case.

Finally, it is urged that even if admission of the questioned evidence were error, the evidence relating to the second heroin container was unaffected thereby. It follows, it is insisted, that such error was harmless beyond a reasonable doubt. (See *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].) From a reading of the entire record we are unable to so conclude. The court could reasonably have found that the second container did not come from the hand of Sanders. Officer Tedrow testified he saw but one container in Sanders' hand; the second was seen by no one until it was in the air. Besides Sanders, there were three other narcotic suspects in the room, permitting an inference that the second container was thrown by one of them. Sanders did not testify.

At the retrial of this case the evidence of the "choking technique" and its fruits will not be allowed. However, we find no constitutional taint in the evidence concerning the balloon claimed to have been struck from the hand of Sanders.

The order denying the motion for a new trial is reversed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied February 5, 1969, and on February 4, 1969, the opinion was modified to read as printed above