[Crim. No. 30057. Second Dist., Div. Two. Aug. 12, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT PENIDA TREVINO, Defendant and Appellant.

**688**

## Counsel

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant Public Defender, Aurelio Munoz and Janice L. Feinstein, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunju Asari, Frederick R. Millar, Jr., and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**COMPTON, J.**—Robert Penida Trevino pleaded guilty to possession of heroin after his motion to suppress evidence pursuant to Penal Code section 1538.5 was denied. He appeals from the judgment of conviction seeking further review of the seizure of the evidence. We reverse the judgment.

The evidence which defendant would suppress is a rubber balloon containing heroin. The balloon was obtained by the arresting officer when the defendant removed it from his mouth after being ordered to do so by the officer. An additional item of evidence is a needle and a syringe which the officer removed from the seat of defendant's vehicle after the arrest.

Defendant contends that the seizure of the balloon was improper because his disgorging of it was the result of antecedent unreasonable conduct on the part of the arresting officer.

The incident began when Officer Frederick of the Lynwood Police Department, while on patrol at night in a marked police vehicle, observed defendant driving an automobile without rear lights at a speed of about 50 miles per hour in a 25-mile-per-hour zone. The officer drove up behind the vehicle and before bringing it to a stop observed the occupants glancing back at him in a manner which he described as "furtive."

According to the officer, defendant stopped his vehicle and while still sitting in the car leaned over and took "something" from the passenger seated beside him and placed that "something" in his mouth.

The officer was trained in the habits of narcotics violators and had personal experience in dealing with heroin users. He was familiar with what has become common knowledge, i.e., that heroin users often carry their contraband in balloons for, among other reasons, to facilitate swallowing of the substance to avoid its discovery and yet be able to retrieve it at a later time.

Believing that defendant was attempting to swallow narcotics, Officer Frederick ran to the driver's side of defendant's vehicle ordering defendant not to swallow. As he approached the vehicle he recognized defendant as an individual he had observed at the police station on a previous occasion. On that previous occasion he had been told by another officer that defendant was a narcotics user.

In order to prevent the defendant from swallowing the contraband Officer Frederick reached into the car, placed his hand on defendant's throat under his jaw and applied sufficient pressure to prevent any swallowing while, according to the officer, not cutting off the defendant's air or circulation. After removing the defendant from his automobile the officer ordered him to remove the article from his mouth.

*People* v. *Superior Court (Kiefer)*, 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559], and its progeny *People* v. *Superior Court (Simon)*, 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205], hold that in the stopping of a vehicle for a traffic violation, without more, neither a search of the vehicle nor the occupants is permissible. Further the additional circumstances necessary to justify such a search cannot be found in so-called "furtive" gestures which are as consistent with innocence as with guilt.

Defendant also contends that the officer's actions in preventing the swallowing of the contraband constituted the use of "brutal and shocking" force of a type condemned in *Rochin* v. *California*, 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396], or constituted an illegal intrusion of defendant's body in violation of the precepts of *People* v. *Bracamonte*, 15 Cal.3d 394 [124 Cal.Rptr. 528, 540 P.2d 624]. It will be recalled that *Rochin* involved the use of a stomach pump and *Bracamonte* involved the forced ingestion of an emetic. Defendant also cites us to cases condemning the choking of an arrestee to force the disgorging of evidence. (*People* v. *Erickson*, 210 Cal.App.2d 177 [26 Cal.Rptr. 546], and *People* v. *Taylor*, 191 Cal.App.2d 817 [13 Cal.Rptr. 73]; *People* v. *Sanders*, 268 Cal.App.2d 802 [74 Cal.Rptr. 350].)

■ In the final analysis the test here is, as it always is, whether under the facts and circumstances and on the total atmosphere of the case the officer's conduct was reasonable (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]) when tested against the standard of a reasonable officer who is experienced in the "devious and cunning devices used by narcotics offenders to conceal their crimes." (*People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)

■ The People endeavor to distinguish this case from the *Kiefer* and *Simon* cases on the basis that the officer had been told that the defendant was a narcotic user, and from the *Erickson, Taylor* and *Sanders* line of cases on the basis that the officer did not "choke" defendant or forcibly compel defendant to disgorge the evidence. We are of the opinion that these distinctions are insufficient to permit the use of the evidence here seized.

Here the initial stopping of the vehicle was proper and we have no doubt that the officer in good faith believed that defendant was attempting to swallow narcotics. More, however, is required before an officer may conduct this type of forcible body search.

In his testimony the officer frankly admitted that at the time he placed his hand on defendant's throat he had no specific information that defendant was in possession of heroin. Defendant's reputation as being a narcotic user is too general an item of information even though coupled with furtive gestures to remove this case from the prohibition against the physical search of traffic violators as spelled out in *Kiefer* and *Simon*, *supra*.

The officer placing his hand on the defendant's throat was an integral part of the search process and cannot be separated from the ultimate seizure of the evidence which took place after defendant had been removed from the vehicle. Hence it cannot be argued that because the defendant removed the evidence from his mouth that there was no search of his person. A physical arrest had been effected and a search commenced at the time the officer placed his hands on the defendant.

The facts at bench bear a close resemblance to those in *People* v. *Garrett*, 237 Cal.App.2d 701 [47 Cal.Rptr. 194]. There narcotic officers staked out the location of a suspected narcotic dealer and thereafter accosted him on the street. The suspect immediately fled and while running made a motion with his hand toward his mouth. The officers wrestled the suspect to the ground and retrieved a balloon of heroin from him. The prosecution sought to justify the seizure by the identical factors relied upon here, viz., (1) defendant was a suspected narcotic dealer, (2) who when temporarily detained on the street (3) took flight and in the course of flight made the furtive gesture of putting hand to mouth. In rejecting the prosecution's argument and suppressing the evidence obtained as a result of the search, the court concluded that neither arrest nor search were supported by probable cause.

As the Supreme Court stated in *People* v. *Bracamonte, supra*, at page 405, footnote 6: "We certainly do not intend to curtail proper police efforts to prevent the destruction of evidence. Inasmuch as the mouth is not a sacred orifice and there is no constitutional right to destroy or dispose of evidence, attempts to swallow evidence can be prevented [citations omitted] as long as excessive force is not employed."

The right to attempt by use of physical force to prevent destruction of evidence is interrelated with the search of the person to whom the force is applied. Attempts to prevent destruction of evidence must be based on probable cause to believe that specific evidence is being disposed of and the standard of probable cause would be the same as that applied to the validity of the arrest and search of the defendant.

As to the amount of force that is permissible the cases uniformly reject the use of choking as a means of preventing the destruction of evidence or forcing defendant to disgorge it. (*People* v. *Sanders, supra.*) Here the officer testified on one occasion that he "grabbed" defendant by the throat and on another occasion described it as applying pressure sufficient to prevent swallowing but not sufficient to cut off air.

The application of force to a person's throat is a dangerous and sensitive activity. It is the type of force that, more than any other, is likely to result in violent resistance by the arrestee. The officer's assessment of whether the force was or was not excessive must be carefully scrutinized. It is not necessary for us to reach the issue of whether the force used here was excessive for the reason that it was not based on sufficient probable cause to justify a search of defendant's person.

The judgment is reversed. --

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied September 1, 1977, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 6, 1977.