[Crim. No. 35756. Second Dist., Div. Two. July 16, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LARA, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and George M. Palmer, Deputy District Attorneys, for Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Edward H. Schulman, Deputy State Public Defender, Kataoka, Moret & Uranga and Carlos A. Uranga for Defendant and Respondent.

OPINION

**BEACH, J.**—Defendant Robert Lara was charged with possessing heroin while a prisoner in the Los Angeles County jail in violation of Penal Code section 4573.6. As authorized by subdivision (a)(7) of Penal Code section 1238, the People appeal from the trial court's order dismissing

the action following the grant of defendant's motion to suppress evidence.

The facts are not in issue since the trial court expressly rejected the defense evidence and credited the testimony of the People's witnesses. It granted defendant's motion to suppress only because it believed it was compelled to do so notwithstanding its announced conclusion "that what the officer did was reasonable." The court further stated that if it had the power to do so it would declare the challenged search and seizure constitutional because it believed that it is "only unreasonable searches that are prohibited by the Constitution, but I don't think I have that option."

The court's understanding of both the federal and California Constitutions is correct; only its conclusion that the holding of the court in *People* v. *Allen* (1978) 86 Cal.App.3d 948 [150 Cal.Rptr. 568], is to the contrary was mistaken. At least we trust that the court's observation in *Mapp* v. *Ohio* (1961) 367 U.S. 643, 657 [6 L.Ed.2d 1081, 1091, 81 S.Ct. 1684, 84 A.L.R.2d 933], that "There is no war between the Constitution and common sense" is still valid today.

Viewed in the light of the trier of fact's determination to credit the testimony of the prosecution's witnesses, the evidence herein established that on the afternoon of October 13, 1978, Los Angeles County Deputy Sheriffs Ross Hanson and Martin Dailey participated in a "search that was being conducted for the Federal Court Judge William Gray who was present at the time of the search."[1] It involved the prisoners' living quarters in the "Men's Central Jail." In the course thereof contraband narcotic paraphernalia, i.e., "a syringe, homemade type with a bul[b] and needle" were found in defendant's bunk.

Following this discovery, defendant was told to undress for a strip search. He not only manifested obvious reluctance to comply with this directive, he "appeared to be under the influence of something as evidenced by his slowed deliberate actions...." Further he refused to comply with the officer's repeated orders that he open his mouth. Even when he did purport to comply, he extended only a portion of his tongue through his clenched teeth, so as to preclude a view of the interior of his mouth. When the officers continued to persist in their demand

---

[1]Judge Gray, perhaps unfortunately, was not called as a witness regarding the allegedly improper police conduct purportedly perpetrated in his very presence..

that he truly open his mouth, defendant ultimately complied, in part, thereby exposing a yellow balloon.

Without touching defendant's throat, Officer Dailey placed his left hand on defendant's chest and his right hand behind his head, and forced defendant's chin against his chest. This is a procedure designed to render swallowing difficult, if not impossible, without interfering with a subject's breathing processes. Nonetheless, although repeatedly commanded so to do, appellant continued to refuse to spit out the balloon and began to move his throat "in a swallowing motion." Therefore, Deputy Hanson testified, "[w]ith my left hand I reached inside of his mouth applying pressure on the side of his teeth, on the side of his jaw, and his mouth was somewhat open." Nonetheless, fearful in view of defendant's stubborn resistance, before sweeping the balloon out of defendant's mouth with one finger, Deputy Hanson warned defendant, "'if you bit[e] my finger, I'm going to bust your head open.'" When examined this balloon, as anticipated, was found to contain heroin.

As the trial court made clear in announcing its decision, its order granting defendant's suppression motion was not based on the thought that the officers had used *excessive* force or that Officer Hanson's threat arising from his understandable concern for the safety of his finger, was inappropriate under the circumstances. Rather, the court stated: "Well, I think the issue that's presented by this case is the issue whether the . . . police are allowed to do *anything* by way of use of force to get a balloon of heroin out of somebody's mouth if the person won't agree or cannot be persuaded or cajoled to give it out." (Italics added.)

This conclusion was incorrect. If any citizen, and particularly a prisoner, might blatantly defy an officer's appropriate and legal orders to open his mouth, or to spit out some foreign object observed therein, recalcitrance would be rewarded at the cost of long established constitutional principles. ■ As our Supreme Court most recently stressed in *People* v. *Bracamonte* (1975) 15 Cal.3d 394, 405, footnote 6 [124 Cal. Rptr. 528, 540 P.2d 624], "We certainly do not intend to curtail proper police efforts to prevent the destruction of evidence. Inasmuch as the mouth is not a sacred orifice and there is no constitutional right to destroy or dispose of evidence, attempts to swallow evidence *can be prevented* [citations] as long as *excessive* force is not employed. [Citations.]" (Italics added.)

It should always be borne in mind that the constitutional proscription against unreasonable searches and seizures, and the judicial rules promulgated in support thereof, are designed to protect the innocent citizen, not the criminal. It is true, of course, that only the guilty profit *directly* from the exclusionary rule. However, it is assumed that over the long run the law abiding members of society will benefit from that curtailment of excessive police conduct that it is hoped will result from the application of such rule. In essence, the criminal is but an unavoidable "third party beneficiary" of the compact effected between the governed and their government.

As a consequence, given a situation supplying probable cause to believe a crime is being committed, one measure to be utilized in fixing the parameters of permissible police conduct designed to resolve the question is to be found in the determination of the amount of fear, physical trauma, embarrassment, indignity, etc., to which an innocent person would necessarily be subjected before his innocence could be clarified.[2] Since presumably there will be voluntary compliance with appropriate directives (see the observations of Justice Fleming on a related issue in *People* v. *Weger* (1967) 251 Cal.App.2d 584, 603-605 [59 Cal.Rptr. 661]), this test does not treat with the amount of force an officer may legally use in overcoming unlawful resistance to his appropriate commands. Nonetheless, no one, no matter how strong the evidence of his guilt, may ever be tortured to enforce compliance even with entirely permissible police demands. (*People* v. *Bass* (1963) 214 Cal.App.2d 742, 746 [29 Cal.Rptr. 778].)[3] Neither may a citizen who has lost the ability to voluntarily comply with an officer's order to disclose, be subjected to gross and painful indignities designed to resolve conduct that necessarily is always ambiguous. One whose stomach was pumped to produce a suspiciously swallowed aspirin, would doubtless deem a belated apology to be insufficient. (*Rochin* v. *California* (1951) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396]; *People* v. *Bracamonte, supra*, 15 Cal.3d 394.)

---

[2]The "need for swift action" and the "seriousness of the offense" involved are also "highly determinative factor[s] in any evaluation of police conduct...." (*People* v. *Johnson* (1971) 15 Cal.App.3d 936, 940-941 [93 Cal.Rptr. 534].) The possession of narcotics within a penal institution is, at least, a serious offense. The need for swift action was, of course, here manifest.

[3]As we there pointed out, however, although "physical evidence, like verbal confessions, may not be 'tortured' from the lips of the accused, it does not follow that merely

While an innocent member of the public should be expected to endure the relatively trivial indignity of opening his mouth or spitting when directed to do so, under the test here suggested such directive should never be accompanied by two loaded revolvers placed against his head. Apart from the terror engendered by such an act, its consequences might well prove fatal were the suspect to physically react in startled alarm; a reaction perhaps more anticipatable from the innocent than the guilty. Clearly such conduct would constitute the use of excessive force and the decision in *People* v. *Allen, supra*, 86 Cal.App.3d 948, 954, stands for nothing more. Therefore, contrary to the interpretation placed upon it by the trial court here, its holding is entirely consistent with all prior law on the subject and does not preclude the use of *reasonable* force to prevent the destruction of evidence.

■ In the present instance, as the lower court found, the officers' response to appellant's refusal to comply with their lawful demand that he spit out the apparent contraband concealed in his mouth fully justified their actions in, first, preventing him from swallowing it and, second, recovering it. In fact, their choice of tactics appears a reasonable response to the concern we expressed in *People* v. *Trevino* (1977) 72 Cal.App.3d 686, 692 [140 Cal.Rptr. 243], i.e., "The application of force to a person's throat is a dangerous and sensitive activity."[4]

Officer Dailey merely bent defendant forward by pressure exerted on the back of his head, thereby avoiding the risks that would have resulted from seizing him by the throat. Defendant, of course, had no right to bite Officer Hanson's finger and he does not contend that he did. Consequently, that officer's most forcefully expressed warning, designed to prevent such unwarranted conduct, did not require suppression of the evidence which the officers had a legal right and duty to recover, and which defendant neither had the right to possess nor to destroy. A contrary holding would require the police to stand passive and helpless

---

because a suspect has placed a substance behind his lips, he necessarily is entitled to cry 'sanctuary' when the officer of the law, under appropriate circumstances, directs him to surrender it." (*People* v. *Bass, supra*, at p. 746.)

[4]In *Trevino*, of course, it was "not necessary for us to reach the issue of whether the force [there employed] was *excessive* for the reason that it was not based on sufficient probable cause to justify a search of defendant's person." (*Id.*, at p. 692; italics added.) The present defendant, a prisoner, was unquestionably subject to search and, as the trial court found, if any force whatsoever was permissible, that here utilized was not "excessive."

while a crime is being committed in their very presence. (See *People* v. *Fields* (1980) 105 Cal.App.3d 341 [164 Cal.Rptr. 336].)

The order of dismissal is reversed.

Roth, P. J., and Compton, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 10, 1980. Bird, C. J., was of the opinion that the petition should be granted.