[No. A041948. First Dist., Div. One. Apr. 13, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL WAYNE JONES, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John J. Sugiyama, Assistant Attorney General, Aileen

Bunney and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

## OPINION

NEWSOM, J.—In an information filed in the Superior Court of Alameda County on March 1, 1988, respondent Michael Wayne Jones was charged with possession of a controlled substance in violation of Health and Safety Code section 11350. After respondent's motion to suppress evidence pursuant to Penal Code section 1538.5 was granted on April 8, 1988, the case was dismissed by the trial court for lack of evidence. This appeal was filed by the People. The facts pertinent to the single issue before us—whether excessive force was used upon respondent—are as follows.

On October 12, 1987, Officer Brian McColgin of the Oakland Police Department's Drug Task Force, was engaged in "a narcotics surveillance at 1408 67th Avenue" in Oakland. The officer was familiar with the "area of very high narcotic activity," where he had made "20 to 30" arrests within the past three years. Three days before, he had made four arrests for possession of heroin. The officer observed each of these recent arrestees ascend the stairs at 1408 67th Avenue to the second floor, stay for approximately one minute, then leave the premises, whereupon each was found to be in possession of a tied toy balloon of heroin.

At approximately 1:30 p.m., Officer McColgin saw respondent proceed to the second story of the surveilled premises, then return to the street. The officer approached respondent, who appeared startled. Respondent placed what appeared to be a "small round looking" blue object in his mouth, which the officer thought was heroin in a toy balloon.

Officer McColgin told respondent to "hold up," then, using his left hand, "applied pressure to his lower mandible, the lower part of the jaw, to prevent him from swallowing the object." Respondent attempted to move back, so the officer placed his right hand on the base of the back of the suspect's neck and ordered him to spit out the balloon.

According to Officer McColgin, respondent did not gag or stop breathing as the result of the pressure applied to his jaw and neck. The officer applied pressure with his thumb underneath the jaw, specifically between respondent's "jaw and . . . adam's apple," and pushed up, to prevent respondent

from swallowing the balloon. At the same time, he was exerting downward pressure on the back of respondent's neck. He demonstrated his hold on respondent to the trial court several times.

After at most "ten to 15 seconds" of pressure applied as described by the officer, respondent expelled the balloon "as he was going to the ground." Officer McColgin landed on top of respondent, then retrieved the balloon. Respondent was subsequently handcuffed and arrested.

The trial court made the following finding after hearing the evidence: "It is my finding of fact that while the officer may have intended to comply with the standards, if indeed he knew what they were, that the physical function of the hands on the anatomy as described in this court by the officer cannot be concluded as being anything less than a choke and it's my finding that the function as opposed to the intention . . . of the officer is the critical linchpin of the case and I find that there was indeed applied a choke hold, that the evidence was developed as a result of that, and I'm going to grant the motion. Not only am I going to, I do. The blue balloon containing suspected substance is for that reason suppressed."

The Attorney General argues that the trial court erred in finding that McColgin applied excessive force in extricating the balloon from respondent's mouth. ■ We must employ a "two-step process" in reviewing the trial court's ruling on respondent's motion to suppress: "In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to resolve them. (Pen. Code, § 1538.5, subd. (i).) . . . [F]or the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' [¶] No less important, however, is the second step of the process. . . . 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (Ibid.) Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather . . . in such review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' (Ibid.) On that issue, in short, the appellate court exercises its independent judgment." (People v. Leyba (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961], fn. omitted.)

█ Turning to the merits of the appeal, we proceed from the established premise that appropriate procedures may be used to prevent destruction of evidence. (*People* v. *Scott* (1978) 21 Cal.3d 284, 293 [145 Cal.Rptr. 876, 578 P.2d 123].) The Fourth Amendment prohibits only " 'unreasonable' " searches. (*Id.* at p. 292.) But, "the use of excessive force which shocks the conscience violates due process of law." (*People* v. *Bracamonte* (1975) 15 Cal.3d 394, 404-405 [124 Cal.Rptr. 528, 540 P.2d 624].)

Our high court has declared: "We certainly do not intend to curtail proper police efforts to prevent the destruction of evidence. Inasmuch as the mouth is not a sacred orifice and there is no constitutional right to destroy or dispose of evidence, attempts to swallow evidence can be prevented [citations] as long as excessive force is not employed. [Citations.]" (*People* v. *Bracamonte, supra,* 15 Cal.3d 394, 405, fn. 6; *People* v. *Lara* (1980) 108 Cal.App.3d 237, 240 [166 Cal.Rptr. 475].) "In the final analysis the test here is, as it always is, whether under the facts and circumstances and on the total atmosphere of the case the officer's conduct was reasonable (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]) when tested against the standard of a reasonable officer who is experienced in the 'devious and cunning devices used by narcotics offenders to conceal their crimes.' (*People* v. *Williams,* 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].)" (*People* v. *Trevino* (1977) 72 Cal.App.3d 686, 690 [140 Cal.Rptr. 243].)

█ While "each case must be decided on its own factual situation" (*People* v. *Allen* (1978) 86 Cal.App.3d 948, 953 [150 Cal.Rptr. 568]), "the cases uniformly reject the use of choking as a means of preventing the destruction of evidence or forcing defendant to disgorge it." (*People* v. *Trevino, supra,* 72 Cal.App.3d 686, 691.) "[A] suspect may not be choked or abused in order to force evidence from his person [citation] or to prevent its disposal by swallowing. [Citation.]" (*People* v. *Bass* (1963) 214 Cal.App.2d 742, 746 [29 Cal.Rptr. 778].) "Choking a man to extract evidence from his mouth violates due process." (*People* v. *Parham* (1963) 60 Cal.2d 378, 384 [33 Cal.Rptr. 497, 384 P.2d 1001].) In *People* v. *Sanders* (1969) 268 Cal.App.2d 802, 804 [74 Cal.Rptr. 350], this court agreed that "choking a person in the recovery of evidence is violative of due process. [Citations.]" Our task is to undertake a "careful examination of the record to determine if the conduct complained of included force resulting in choking the accused." (*People* v. *Sevilla* (1961) 192 Cal.App.2d 570, 575 [13 Cal.Rptr. 714].)

The Attorney General challenges what it characterizes as the trial court's "position that an officer [cannot] exert any pressure on a defendant's throat." We are urged to adopt a test in which we focus on the degree of force employed by the police. Relying on *State* v. *Williams* (1977) 16 Wn.App. 868 [560 P.2d 1160, 1163], the Attorney General submits that it is

"constitutionally reasonable for the police to 'place' their hands on a suspect's throat to prevent the swallowing of evidence, as long as they do not 'choke' him, i.e., prevent him from breathing or obstruct the blood supply to his head." In accord, *State* v. *Taplin* (1984) 36 Wn.App. 664 [676 P.2d 504]; LaFave, Search and Seizure, A Treatise on the Fourth Amendment, (2d ed. 1987) § 5.2(i), pp. 474-475.)

California law, however, has not recognized distinctions in the degree of choking, but rather has drawn the line of illegality at choking. The court in *People* v. *Taylor* (1961) 191 Cal.App.2d 817 [13 Cal.Rptr. 73], rejected the notion that a reasonable amount of choking is permissible, with the following explanation: "In the view of the People, the question in each case would be whether the choking was more severe than was necessary to prevent the accused from swallowing an object. There can be no such test of illegality. When illegality is shown the law does not recognize degrees of illegality and inquire whether the conduct was grossly or only mildly illegal. No object that is forced from an accused by means of choking should ever be received in evidence." (*Id.* at p. 821; see also *People* v. *Erickson* (1962) 210 Cal.App.2d 177, 181 [26 Cal.Rptr. 546]; *People* v. *Martinez* (1954) 130 Cal.App.2d 54, 56-57 [278 P.2d 26].)

The reason for condemning choking as a method of evidence retrieved is simple: "The application of force to a person's throat is a dangerous and sensitive activity. It is the type of force that, more than any other, is likely to result in violent resistance by the arrestee." (*People* v. *Trevino, supra,* 72 Cal.App.3d 686, 692.) Moreover, constitutional rights cannot depend on so fine a distinction as the precise degree of choking employed to prevent swallowing of evidence. (*People* v. *Brinson* (1961) 191 Cal.App.2d 253, 256 [12 Cal.Rptr. 625].) And, finally, choking is not necessary to prevent evidence destruction. (*People* v. *Sanders, supra,* 268 Cal.App.2d 802, 805.) Alternative methods of evidence retrieval are commonly available—such as transportation of the suspect to jail, followed by isolation in a cell and surveillance—which do not violate due process. (*People* v. *Bracamonte, supra,* 15 Cal.3d 394, 404; *People* v. *Allen, supra,* 86 Cal.App.3d 948, 952; *People* v. *Rodriguez* (1977) 71 Cal.App.3d 547, 557-558 [139 Cal.Rptr. 509].)

According to the testimony of Officer McColgin, he placed pressure upon respondent below the chin and above the throat. At the same time, he pushed down on the back of respondent's neck, employing sufficient force to cause respondent to fall to the ground.

We are bound to defer to the trial court's finding that "there was indeed applied a choke hold . . . ." ■ When ruling on a suppression motion, "the power to judge the credibility of the witnesses, resolve any conflicts in

the testimony, weigh the evidence and draw factual inferences, is vested in the trial court." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; *People* v. *Dominguez* (1988) 201 Cal.App.3d 345, 353 [247 Cal.Rptr. 81].) On appeal, the facts must be reviewed in the light most favorable to the judgment, and the trial court's finding must be upheld if supported by substantial evidence. (*People* v. *Leyba, supra,* 29 Cal.3d 591, 597; *People* v. *Dominguez, supra,* 201 Cal.App.3d at p. 353.) ■ As was most recently observed in an opinion in which, on roughly comparable facts, a trial court had arrived at an opinion diametrically opposite from that reached by the lower court here, whether impermissible choking procedures were employed is a question of fact to be resolved by the trial court. (*People* v. *Cappellia* (1989) 208 Cal.App.3d 1331 [256 Cal.Rptr. 695]; *People* v. *Miller* (1967) 248 Cal.App.2d 731, 735 [56 Cal.Rptr. 865]; *People* v. *Mora* (1965) 238 Cal.App.2d 1, 4 [47 Cal.Rptr. 338]; *People* v. *Sevilla, supra,* 192 Cal.App.2d 570, 574.)

In reaching our conclusion, we recognize that reasonable force amounting to less than choking has been approved as an evidence retrieval method. (See *People* v. *Lara, supra,* 108 Cal.App.3d 237, 240-242; *People* v. *Miller, supra,* 248 Cal.App.2d 731, 735; *People* v. *Bass, supra,* 214 Cal.App.2d 742, 746-747; *People* v. *Poole* (1959) 174 Cal.App.2d 57, 62-63 [344 P.2d 30].) ■ But here, the officer exerted considerable pressure on the suspect's neck, both under his jaw and from behind. The trial court had the benefit of repeatedly observing a re-creation of the neck hold used by the officer. We conclude that substantial evidence supports the trial court's finding of an unlawful choke hold. (*People* v. *Sanders, supra,* 268 Cal.App.2d 802, 805; *People* v. *Sevilla, supra,* 192 Cal.App.2d 570, 576.)

The judgment is affirmed.

Racanelli, P. J., and Stein, J., concurred.