116 N.J. Super. 440 (1971)
282 A.2d 759
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL YORK, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1971.
Decided October 22, 1971.
*442 Before Judges GOLDMANN, COLLESTER and MINTZ.
Mr. Matthew M. Keshishian argued the cause for appellant (Messrs. Krugman, Chapnick, Grimshaw & Dubow, attorneys).
Mr. Fred H. Kumpf, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant was indicted for unlawful possession of heroin, in violation of N.J.S.A. *443 24:18-4. Prior to trial he moved to suppress the evidence, claiming it was the result of an unlawful search and seizure. The motion was denied, defendant tried to a jury, found guilty, and sentenced to a state prison term of 4-6 years and fined $100.
On this appeal defendant first argues that the trial judge erred in denying his motion to suppress because the police did not have probable cause to search and arrest. Their search and seizure, he avers, violated his constitutional rights, and therefore the glassine packet containing the heroin in question should not have been admitted in evidence.
At the hearing on defendant's motion to suppress the court heard the testimony of two of the three arresting officers, members of the Paterson Narcotics Squad, whose qualifications and credentials were stipulated by defense counsel. Officer Clark testified that just before noon of June 23, 1969 he was on routine patrol in an unmarked police car with two other members of the squad, Officers Brejack and Hutchinson, in the area of Bridge Street, Paterson. There is a heavy traffic of narcotics users in that area, at least 100 narcotics arrests having been made there in the last year. Clark said that he and other members of the narcotics squad had had defendant under surveillance for several days prior to the event in question since he was suspected of being involved in the narcotics traffic because of his association in the area with known narcotics violators. When the witness saw defendant walking north on Bridge Street he and his two companions decided to follow him, and when defendant went into a candy store they circled the block, got out of the patrol car, and positioned themselves behind a building at the intersection of Bridge and Godwin Streets, north of the store. Defendant eventually left the store and walked north on Bridge toward the corner where the officers were concealed. Clark testified that he had noticed a young man walking some four or five feet behind defendant. When defendant reached the corner the officers *444 stepped out from their hiding place and came up to defendant, surprising him. They saw him turn around, hand a folded handkerchief to the young man behind him and heard defendant say something to him. The youth was about to put the handkerchief into his pocket when the officers moved in on the pair. Officers Clark and Brejack intercepted defendant, and Officer Hutchinson stopped the youth and without resistance confiscated the handkerchief. Clark testified that at that moment he saw a glassine packet of white powder fall from the handkerchief. The youth identified himself as Harry Robinson. A search of defendant revealed no contraband.
The trial judge permitted Clark, over defense counsel's objection, to testify to a statement Robinson had made to the officers, within defendant's presence and hearing. What Robinson said was that he had never seen defendant before and that defendant gave him a handkerchief and told him to put it in his pocket. The judge held the statement part of the res gestae, i.e., part of the surrounding circumstances under which the seizure took place, and allowed it on the issue of whether the search and seizure was reasonable.
Officer Hutchinson corroborated Clark's testimony, adding that defendant looked in the direction of the officers when they started toward him, just before the attempted transfer. The young man attempted to put the handkerchief, balled up in his fist, into his pocket, but then stopped and released it to Hutchinson. The officer placed him under arrest, searched him and found nothing.
Based on this testimony the trial judge ruled there was probable cause for the search, and that the search and seizure was reasonable. He found that there was considerable narcotics traffic in the area; defendant had been, and at the time in question was, under surveillance for traffic in narcotics, and the sudden transfer of the handkerchief was in itself a suspicious transaction. These conclusions were stipulated by defense counsel. The trial judge denied the suppress motion.
*445 The first trial resulted in a mistrial when defendant chose not to continue with 11 jurors, after one of them had become ill. Robinson testified for the State at that trial.
The first day of the second trial consisted of Officer Brejack's testimony, which corroborated that of the officers who had testified at the suppress motion hearing. On the second trial day, and just before the jury entered the courtroom, defense counsel notified the judge that defendant requested permission to address the court. The judge twice warned defendant that anything he said could be used against him, and that what he was doing was against the advice of his attorney. Defendant nonetheless still desired to address the court, and accordingly was permitted to do so. He then advised the judge that the trial should be stopped because Robinson had decided to change his prior testimony and tell the truth. After some discussion the judge inquired of the prosecutor if he was ready to take Robinson's testimony. It was decided to have Robinson testify out of the presence of the jury. After he was sworn the trial judge cautioned him as to the consequences of his failure to tell the truth under oath. Robinson then testified that it was he who was in actual possession of the heroin at all times; he did not know defendant; defendant had not given him anything, and the handkerchief was his. He added that Officer Clark grabbed him, took the heroin out of his pocket, and told him to say that defendant had given the packet to him. Robinson admitted he had lied at the first trial.
The prosecution moved for a mistrial  a motion we find startling, to say the least. Defense counsel (not present counsel), with equally remarkable obtuseness, objected, stating that he did not consider the prosecutions' surprise a sufficient ground for a mistrial. He asked that the trial continue. Shortly after this, defense counsel, suddenly recognizing the advantage that would be his, withdrew his objection and said he would rely upon the judge's discretion. The judge thereupon asked the prosecutor whether he was aware of the effect should the mistrial motion be granted, *446 and when he answered in the negative the trial was recessed so that he might confer with his superiors to learn what the consequences would be. Following the recess the prosecutor, now enlightened, withdrew the motion. Defense counsel stated that he had no objection. The jury was then brought back and the trial continued with the State calling the other two arresting officers, who testified substantially as they had on the motion to suppress. The State closed its case without calling Robinson to the witness stand.
Robinson was the first witness for the defense. On direct examination he testified substantially as he had that morning out of the presence of the jury, adding that he was a narcotics user himself. On cross-examination the prosecutor questioned him as to the contents of a signed statement he had given the police at the time of his arrest, pointing up the conflicts between his testimony and that given at the first trial with respect to the events leading up to the arrest. Defendant then took the witness stand in his own behalf and substantially corroborated Robinson's testimony.
We are satisfied that the motion to suppress was correctly denied in light of what the arresting officers knew and saw at the time in question, and which we have detailed earlier in this opinion. There was every reason for the officers to have probable cause to believe that a crime was being or had been committed. To hold otherwise would fly in the face of the "factual and practical considerations of every day life on which reasonable men, not legal technicians act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), cited and quoted with approval in State v. Burnett, 42 N.J. 377, 386-387 (1964).
As the court in State v. Romeo, 43 N.J. 188, 203 (1964), observed, the traffic in drugs is carried on "cautiously and furtively and in as many different ways and by as many conceivable methods as human ingenuity can devise in order to escape detection and criminal consequences." It is within this framework that we must view what happened here. The officers were acting on something more *447 than mere raw suspicion; what they knew of the area and defendant's associations, as well as what they observed, shows that what they did was well grounded in the totality of the facts and circumstances of the case. See State v. Contursi, 44 N.J. 422, 430-431 (1965); State v. Miller, 47 N.J. 273, 278 (1966). In considering the totality of circumstances there must be included the knowledge and specialized experience narcotics squad officers have as to the methods and devices of narcotics users.
We find without any support in the record defendant's claim that the arrest occurred when the officers first stepped out from behind the building and approached him, before any transfer had taken place.
Defendant suggests that the search of Robinson was unreasonable and therefore constitutionally prohibited. We need go no further than to say that what Officer Hutchinson did was reasonable in light of the facts and circumstances already outlined. He and his colleagues acted upon an entirely reasonable premise, when they saw defendant turn and give the handkerchief to Robinson, that more than just a handkerchief was involved and that in all probability there was an attempt to transfer narcotics.
What was done here was, moreover, necessary to preserve the evidence from possible destruction or removal  a result which certainly would have been invited had the officers been obliged to first obtain a search warrant. The situation was urgent; the officers cannot be faulted for acting upon the practical knowledge they had gained in narcotics work and which informed them as to how readily this type of evidence can be gotten rid of. Cf. State v. Santos, 101 N.J. Super. 98 (App. Div. 1968), certif. den. 52 N.J. 171 (1968).
Defendant further claims that there was an abuse of judicial discretion when the trial judge allowed defendant and Robinson to testify outside the presence of the jury  this, he says, to the State's advantage and his detriment. A defendant should not be permitted to raise as error a course of action in which he persisted against the advice of counsel *448 and the trial judge's warnings, and which resulted in precisely what he desired and urged. We note that no objection was made to defendant's addressing the court or to Robinson's testifying. If the matter is to be considered at all, it must be under the plain error rule, R. 2:10-2. We can see no possible reason for applying that rule, concluding as we do that what happened did not result in a manifest denial of justice to defendant.
Defendant asserts that the trial judge usurped the jury's function of determining the credibility of witnesses when he heard the testimony of Robinson out of its presence, after learning that he had changed his story. How this procedure could have influenced the jury escapes us; it was still left for the jury to decide whether to believe or disbelieve Robinson.
Defendant also urges error because the trial judge allowed a recess so that the prosecuting attorney might consult his superiors as to the consequences that would follow upon the granting of his mistrial motion. Again, defendant did not object. To apply the plain error rule would be unreasonable, for we find it difficult to see how the trial judge's exercise of discretion, which resulted in the very end desired by defendant, can now be urged as an abuse of discretion. Here, too, we find no unjust result visited upon defendant.
Affirmed.