[Crim. No. 5255.   Second Dist., Div. Three.   Dec. 30, 1954.]

THE PEOPLE, Respondent, v. RUDOLPH MARTINEZ, Appellant.

Eugene V. McPherson for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

SHINN, P. J.— The appeal in this case presents the question whether a conviction of possession of a narcotic may stand where the accused put the package into his mouth, was choked and wrestled to the ground by the arresting officers until he gave up the package, which was used in evidence to prove the offense.  We answer that, in our opinion, such a conviction should not be affirmed.

Rudolph Martinez, the appellant, was charged with a violation of the Health and Safety Code, section 11500 (illegal possession of narcotics), and was convicted, having waived a trial by jury.  He appeals from the judgment and from an order denying a motion for new trial.  He contends on appeal that the court erred in the admission of certain evidence, viz., a small package of heroin, in that the evidence was obtained in violation of the due process clause of the Fourteenth Amendment of the United States Constitution

and the California Constitution, article I, section 13, through the use of force applied to his person.

Defendant was in his car, apparently stopped or parked, on November 23, 1953, at about 9 p. m., on Griffin Avenue in Los Angeles, when police officers approached as he was about to get out, and identified themselves as officers through the closed window of the car. According to the testimony of Officer Aguirre, defendant immediately placed a white package in his mouth and began chewing it, whereupon the officers entered the vehicle and Officer Lucarelli placed a choke hold on defendant and ordered him to "spit out what he had put into his mouth." A struggle ensued in which Officer Aguirre joined. He testified "We fell to the ground with him and on the ground next to the curb I observed him spit out a small package which I recovered." Aguirre testified that the choke hold was kept on defendant by Lucarelli for a minute or two, "maybe less," and that all that was recovered was what was taken from defendant's mouth. All the testimony of the event was given by Officer Aguirre; defendant did not testify.

Following our reluctant affirmance of a judgment of conviction of possession of a narcotic in *People* v. *Rochin,* 101 Cal.App.2d 140 [225 P.2d 1, 913], and denial of a hearing by the Supreme Court, our judgment was reversed by the Supreme Court of the United States (342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]). In the Rochin case the officers had choked Rochin in order to extract capsules from his mouth. Being unsuccessful, they took him to an emergency hospital where he was strapped down and given an emetic which caused him to disgorge the capsules. The contents were used to prove the offense charged. The court held that the conviction violated the due process clause of the Fourteenth Amendment. The views of the court pertinent to the facts of that case were expressed as follows: "Applying these general considerations to the circumstances of the present case, we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensi-

bilities. They are methods too close to the rack and the screw to permit of constitutional differentiation. . . . It would be a stultification of the responsibility which the course of constitutional history has cast upon this, Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach.''

The facts of the present case differ from those of the Rochin case only with respect to the variety of methods that were used on Rochin, who was either more durable than Martinez or was not choked as hard. The question, however, is not how hard an officer may choke a suspect to obtain evidence but whether he may choke him at all. It is clear that the substance was choked out of Martinez. The fact that the officers and Martinez were thrown to the ground indicates the extent of the force that was deemed necessary and that sufficient force was used to accomplish that purpose. The People say that the officers used only the force that was reasonably necessary to make an arrest. This statement ignores the evidence. Three officers were present; only one of them testified. There was no word of testimony that Martinez was placed under arrest or told he was being arrested or that he was resisting arrest. Officer Aguirre testified that Officer Lucarelli placed a choke hold on Martinez and that ''we fell to the ground with him.'' The package fell into the street next to the curb. All this took place for the sole purpose of retrieving the package from defendant's mouth. The State says it could have been inferred that defendant spat out the package ''of his own volition.'' The same might be said of the surrender of a wallet at the point of a gun but the statement would be unconvincing. Other statements in the State's brief are that the officers ''made an attempt to effect an arrest,'' ''the recovery of the contraband was not done in a manner shocking to the conscience or smacking of brutality'' and ''they did not strike him nor did they take any action other than to effect a lawful arrest.'' It is said further that the case ''is in no wise comparable to the Rochin case and that it was the breaking into Rochin's room and making use of a stomach pump which the Supreme Court characterized as ''brutal conduct offending a sense of justice and depriving a defendant of due process.'' But the court said: ''Rochin seized the capsules and put them in his mouth. A struggle ensued, in the course of which the three officers choked Rochin, 'jumped upon him' and attempted to extract

the capsules. The force they applied proved unavailing against Rochin's resistance." It is true that the court said of all the conduct "so here, to sanction the brutal conduct which naturally enough was condemned by the court whose judgment is before us would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society." The State would have us believe that this quoted language of the court was not related to the struggle with Rochin in which three officers choked him, jumped upon him and used force to recover the capsules. Clearly, the State's argument on this point is one of necessity in attempting to distinguish the Rochin case; but while the State goes to extreme limits to justify the conduct of the officers in choking Martinez and throwing him to the ground the State's brief read as a whole very properly concedes that if choking Martinez and throwing him to the ground was brutal conduct such as "shocks the conscience," the defendant's right to due process of law was violated. In order to evade the holding in the Rochin case, the State merely argues that there was no "conduct that shocks the conscience," no "brutal conduct," "nothing to discredit law" or to offend "a sense of justice." Although these are relative terms and our own views are diametrically opposed to those stated in the State's brief, we accept as our guide what we believe to be the enlightened thinking of all people who believe in the dignity of the individual and that justice in its larger sense is synonymous with fair play. And aside from the very few who entertain the callous belief that the conviction of an offender is of more importance to society than the lawfulness of the means by which it is accomplished, we are confident that the conduct of the officers in question here would meet with universal condemnation.

The State says the case of *People* v. *Dawson*, 127 Cal.App. 2d 375 [273 P.2d 938], is "directly in point." It is not in point. In that case the officer "merely put his arm around defendant's neck to hold him." Defendant spat out the substances when told to do so. And the court said there was "a total absence of any showing of brutal or shocking force used against defendant." Finally the State says: "The Rochin case should not operate as a blue print for the hiding and destruction of incriminating evidence; to hold the reasoning of that case applicable to the dissimilar factual situation herein would accomplish this result." We hold the reasoning of the Rochin case to be applicable to the facts of the present case.

And in so applying it we say of that decision that it is one that should serve as a warning to all those who are tempted to use brutal force for the extraction of evidence from the person of an accused and to all those who have a choice between upholding and condemning the use of such force. A conviction obtained by the use of evidence so obtained is in violation of due process.

The judgment is reversed and the superior court is directed to dismiss the cause. The appeal from the order denying motion for new trial is dismissed.

Vallée, J., concurred.

Wood (Parker), J., concurred in the judgment.

A petition for a rehearing was denied January 10, 1955, and respondent's petition for a hearing by the Supreme Court was denied January 26, 1955. Edmonds, J., was of the opinion that the petition should be granted.