[Crim. No. 8021. Second Dist., Div. Four. Nov. 26, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GARY LYNN ERICKSON, Defendant and Appellant.

Robert A. Ortiz for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Otto J. Hetzel, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant Gary Lynn Erickson and two codefendants (not appealing) were charged with a violation of section 11500 of the Health and Safety Code, possession of a narcotic, heroin. The information charged defendant with a prior conviction of a felony, to wit, possession of narcotics. Defendant pleaded not guilty and denied the prior felony conviction. Trial was by the court, jury trial having been duly waived by defendant and all counsel. Defendant was found guilty. No finding was made on the alleged prior conviction.

Defendant waived expressly the right of a referral of his case to the probation department and personally requested the court to pronounce sentence forthwith. He was sentenced to the state prison for the term prescribed by law and sentence was ordered to run concurrently with any other sentence that defendant may either be serving or is subject to serve. This is an appeal from the judgment of conviction.

A summary of the evidence adduced is as follows: John Olsen and Arthur F. Van Court, narcotic officers, on June 6, 1961 "staked out" in front of an apartment building at 11450 Van Owen Street in Los Angeles. They had information that the persons residing at this address had been dealing in narcotics. After they observed defendant and codefendants drive into the driveway at this address, they approached their automobile. Defendant was behind the steering wheel and the other two codefendants were also in the front seat. The officers did not know who was in the car when they approached it. The driver's window was down, and as Officer Olsen

approached the car with a flashlight in his hand, he observed that defendant's and codefendants' hands were together and they appeared to be examining an object as he shined the light in the car. He stated "police officers," and defendant's hands moved to his mouth. Defendant had an object in his left hand, the end of which was between the forefinger and thumb in the manner that a person holds a cigarette. Officer Olsen testified he thought it was a part of a marijuana cigarette. It appeared to be a small rolled paper about an inch long, the end of which was rough and appeared to have been burned.

The officer reached in and grabbed defendant's left hand with the object in it which was almost to defendant's mouth. Defendant bent his body forward so that his mouth was on the officer's hand. Defendant closed his mouth on top of the officer's hand and the officer then released defendant's hand and pulled his own hand out of defendant's mouth. He lost view of the object as defendant's mouth closed. The officer then pushed and pulled defendant back up against the seat. He noticed in the corner of defendant's mouth a slight bit of brown wrapping paper, and he commanded, "Spit it out, spit it out." The officer placed his hand on defendant's throat, applied pressure to the throat or "Adam's apple." Defendant gagged and coughed, and a light-colored object appeared to come from his mouth.

On cross-examination the officer testified as follows:

"Q. Officer, when you had Erickson by the throat and you said, "Spit it out, spit it out," and you say you saw something go out of the right side of his mouth, at the time you saw this go out, whatever it was, you didn't know what it was, did you? A. No, sir, I did not.

"Q. And, being completely honest about it, you didn't see any capsule come out of his mouth, did you? A. I didn't know it was a capsule.

"Q. Well, you didn't see a capsule come out of his mouth? A. I don't know if I did or that I didn't.

"Q. All right. With respect to this capsule that you picked up off the seat, in truth and in fact, it was not moist, was it? A. That is correct.

"Q. It was absolutely dry? A. It was.

"Q. Now, when you had Erickson by the throat, you were holding him in a firm grip exerting enough pressure to choke off his breathing, weren't you? A. I don't think so, sir.

"Q. Well, you were choking him so he couldn't swallow,

isn't that true? A. I was trying to keep his Adam's apple from moving, yes.''

''Q. All right. You were trying to prevent him from swallowing and you were exerting enough force to prevent him from swallowing, isn't that true? A. I think so.

''Q. And he gagged and coughed from the force you exerted, isn't that true? A. At the first real coughing he coughed it out, as I said. It wasn't but a few seconds.''

Officer Olsen then put the cuffs on defendant and asked him to slide out of the seat. He found a paper capsule containing a white substance lying in the car seat next to where defendant had been sitting. It appeared to be the same item which he thought defendant coughed out. He made a search of the car and found nothing resembling a brown cigarette in the automobile, nor did he find anything resembling it in defendant's mouth or on his person after the search. In his conversation with the officer after the arrest, defendant stated that the capsule the officer found on the seat was not what he put in his mouth. He told the officer he did not know anything about the capsule; that what he had had in his hand was a marijuana roach which he had placed in his mouth. No roach was found.

Officer Olsen testified that because of the furtive movements of defendant and codefendants when he shined the light into the car and stated ''police officers,'' he believed a felony had been committed. Both officers testified that they examined codefendants and believed them to be under the influence of narcotics. Officer Van Court testified that after he had handcuffed the two codefendants and brought them out of the car, he then went to assist his partner with the struggle with defendant, but by that time defendant was out of the car. Defendant did not take the stand nor testify in his own behalf.

Defendant's primary contention on appeal is that the physical force used by the police officer to obtain the evidence was in violation of the Fourteenth Amendment of the United States Constitution in that it constituted brutal conduct offending a sense of justice (*Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]). This contention of unconscionable force is made for the first time on appeal. Respondent contends such objection must first be raised in trial court. At the trial defendant based his objections to the admission of the narcotics in evidence upon the grounds that the search was not justified by probable cause. █ In addition to the facts testified to by Officer Olsen, Officer Van Court testified that when he flashed his light into

the car he observed a capsule (which proved to be heroin) drop from a codefendant's hand and was lying in plain view at the foot of one of the codefendants. He also saw a rubber container from which another capsule appeared to be partially emerging. Clearly, the search was justified under all the circumstances shown to be present.

 While the objection of unconscionable force used by the officers should have been specified by defense counsel as an additional basis for his objection to the introduction of the narcotics in evidence the failure to do so should not preclude this court from considering the matter on appeal. (See *People* v. *Millum,* 42 Cal.2d 524, 526-527 [267 P.2d 1039]; *People* v. *Rand,* 202 Cal.App.2d 668, 672-673 [21 Cal.Rptr. 89].) The cases cited pertain to illegally obtained confessions but the principles are sufficiently similar to warrant the same treatment; they all involve applications of improper conduct in the obtaining of evidence.

In *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26], a conviction was reversed where evidence used to obtain the conviction had been "choked out of" defendant. In that case the court held that choking a substance out of a defendant's mouth differed from the facts in the *Rochin* case "only with respect to the variety of methods that were used on Rochin, who was either more durable than Martinez or was not choked as hard."

The facts presented in *People* v. *Martinez, supra,* differ in two respects from the facts presented in the case at bar. First, it appears that the extent of the force used to choke the evidence out of Martinez, who was wrestled to the ground by the arresting officer, exceeded the force used against defendant in the case presented before us. The facts here, however, are identical in this respect with the facts presented in *People* v. *Taylor,* 191 Cal.App.2d 817, 821 [13 Cal.Rptr. 73], where it was contended by the People that choking, which was not severe enough to stop breathing but only hard enough to prevent swallowing, was permissible in order to recover evidence. The court unequivocally answered this contention by stating: "There can be no such test of illegality. When illegality is shown the law does not recognize degrees of illegality and inquire whether the conduct was grossly or only mildly illegal. No object that is forced from an accused by means of choking should ever be received in evidence."

In the case presently on appeal, Officer Olsen admitted on

cross-examination that he believed he exerted enough force in choking defendant to prevent him from swallowing.

In regard to the extent of force which is permissible to be used to choke evidence out of a person, the court in *People* v. *Sevilla,* 192 Cal.App.2d 570, 575 [13 Cal.Rptr. 714], quoted the following from the *Martinez* case, with italicized emphasis added, "*The question, however, is not how hard an officer may choke a suspect to obtain evidence but whether he may choke him at all.*"

The second notable difference between the facts in this case and those presented in *People* v. *Martinez, supra,* is that it was clear in the latter case that the substance offered in evidence had been choked out of Martinez, while in the case at bar it is not absolutely certain that the capsule discovered on the car seat next to where defendant was sitting was the same object which appeared to come from defendant's mouth when he coughed and gagged as a result of the officer's choking. A substantially similar fact situation was presented in *People* v. *Brinson,* 191 Cal.App.2d 253 [12 Cal.Rptr. 625], where a bindle of heroin was discovered on the floor after a narcotics agent had thrown Brinson to the floor and choked him. The heroin was found under Brinson as they raised him up from the floor, and it was apparent that no heroin had been there prior to the struggle. ▮ In the case presently before us it is clear that the officer acted illegally in attempting to choke evidence out of defendant and that the capsule offered in evidence which the officer thought was the same item which came from defendant's mouth was improperly received.

As pointed out in *People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513], when evidence is illegally obtained, "the success of the lawless venture depends entirely on the court's lending its aid by allowing evidence to be introduced. . . . Out of regard for its own dignity as an agency of justice and custodian of liberty the court should not have a hand in such 'dirty business.'" In regard to evidence which has been "choked out of" a defendant we agree with the judicial attitude expressed by the following language in *People* v. *Martinez, supra,* 130 Cal.App.2d 54, 57, "And aside from the very few who entertain the callous belief that the conviction of an offender is of more importance to society than the lawfulness of the means by which it is accomplished, we are confident that the conduct of the officers in question here would meet with universal condemnation."

■ Respondent asserts that there was sufficient evidence to sustain the conviction of defendant for possession of heroin, even if the capsule which assertedly came from defendant's mouth is removed from consideration. Two additional capsules of heroin were found on the floor of the car next to codefendant Gilbert's feet. However, assuming the evidence in the case, excluding the illegally obtained evidence, could support the conviction that fact cannot justify us in sustaining a judgment pronounced after a denial of any essential element of due process of law which, in our opinion after an examination of the entire cause, has resulted in a miscarriage of justice. (*People* v. *Sarazzawski,* 27 Cal.2d 7, 16 [161 P.2d 934] ; *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243].)

Judgment reversed.

Burke, P. J., and Ford, J.,* concurred.

A petition for a rehearing was denied December 13, 1962, and respondent's petition for a hearing by the Supreme Court was denied January 23, 1963.

*Assigned by Chairman of Judicial Council.