101 N.J. Super. 98 (1968)
243 A.2d 274
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE DELOS SANTOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1968.
Decided April 9, 1968.
*99 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Michael B. Blacker, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. James R. Zazzali, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
*100 The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from a conviction for possession of narcotics. The heart of the appeal is the claim that brutality of the police in "choking" an alleged confederate to prevent his swallowing narcotics assertedly handed him by defendant when about to be arrested by the police invalidated the resulting disclosure of the narcotics and prevented their lawful use by the State as evidence in the resulting prosecution. Reliance is placed on Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951) and certain subsequent California state decisions typified by People v. Martinez, 130 Cal. App.2d 54, 278 P.2d 26 (D. Ct. App. 1955).
No motion in advance of trial to suppress the evidence was here made, as required by R.R. 3:2A-6, nor was any objection to the evidence, or attempt to justify the failure to make the pretrial motion offered by defendant at trial. These factors ordinarily preclude consideration of the point on appeal. State v. Fair, 45 N.J. 77 (1965). Defendant argues that under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), we are nevertheless required to give consideration to the alleged constitutional infirmity, at lease to the extent of remanding for purposes of a hearing to determine whether defendant waived his rights. We have decided to pass the latter rather complex point as we are fully satisfied that under the version of the evidence most favorable to defendant the activity of the police in preventing destruction of this evidence is not constitutionally vulnerable. Incidentally, we disagree with the State's contention that defendant has no standing to raise the argument of illegality of the seizure. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); State v. Wade, 89 N.J. Super. 139, 156 (App. Div. 1965).
The State's proofs were, in effect, that after nearby surveillance of apparently open sales of narcotics by defendant, *101 the police approached him and one Galarza and another companion, whereupon defendant handed Galarza two glassine envelopes (later proven to contain narcotics) and told him to "swallow them." Galarza put them in his mouth, Detective Gockeler "grabbed [him] by the throat," Detective Lyons tried to pry open Galarza's mouth, and in the ensuing struggle all three fell to the ground. Thereupon Lyons was able to extract the envelopes from Galarza's mouth. Lyons testified that Gockeler "grabbed [Galarza] around the throat."
In the Rochin case, supra, the police invaded defendant's home and bedroom, and, when they asked him who owned two capsules on a nightstand, he put them in his mouth. A struggle ensued in the course of which three policemen jumped upon him and attempted to extract the capsules, but unsuccessfully. He was handcuffed and taken to a hospital where a doctor at police direction forced an emetic solution through a tube into defendant's stomach. This "stomach pumping" produced vomiting and brought forth the capsules, which contained morphine (342 U.S., at p. 166, 72 S.Ct. 205. The United States Supreme Court held that the procedures of the police were such as to "shock the conscience." The court viewed the episode in its entirety  the breach of defendant's privacy, the struggle to open his mouth and "the forcible extraction of his stomach's contents." It was said these were "methods too close to the rack and the screw to permit of constitutional differentiation" (at p. 172, 72 S.Ct., at p. 210), and it was concluded that a state conviction resting on evidence so obtained lacked due process.
In subsequent California decisions it was held that the Rochin principle applied in a case where what the police did was essentially what happened here. See, e.g., People v. Martinez, supra. There is no prior New Jersey case which can unequivocally be identified as involving the application of force to a suspect's throat to prevent destruction of evidence. However, in State v. O'Shea, 16 N.J. 1 (1954), a *102 bookmaking suspect, upon approach by the police, put several papers in his mouth and attempted to chew and swallow them. "* * * [T]he two officers struggled with O'Shea until he disgorged the papers." They were found to be betting slips and the defendant was convicted. The Supreme Court distinguished Rochin, after reviewing the facts there, by observing: "There is not the slightest similarity between the circumstances of that case and those present here" (16 N.J., at p. 8). It is evident from the O'Shea opinion that the police there must have exerted physical force against the suspect's body sufficient to have prevented ingestion or induced expulsion from his mouth or throat.
We can find no material difference between the facts here and those which in O'Shea our Supreme Court held free from the bar of the Rochin rule. The police have a right short of outright brutality of a shocking nature to apply such reasonable force to a suspect as is fairly necessary to prevent an imminent destruction of evidence of the commission of crime. This was all that occurred here. Each case must be appraised on its own facts.
We find no basis for reversal in defendant's other contentions: that the trial judge made prejudicial comments in his charge, that four members of the jury had relatives in law enforcement and that defendant was forced to wear "prison clothes" at his trial.
Affirmed.