[No. 1903-2.    Division Two.    February 1, 1977.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES DELBERT WILLIAMS, *Respondent.*

REED, J., dissents by separate opinion.

*James E. Carty, Prosecuting Attorney,* and *Chris L. Matson, Deputy,* for appellant.

*Arthur Curtis* of *Clark County Legal Defender,* for respondent.

PEARSON, J.—The State appeals from an order suppressing evidence seized from the person of James Delbert Williams. At issue is the amount of force the police may constitutionally employ to prevent a person from swallowing evidence. We affirm the order of suppression.

On the evening of March 17, 1975, Deputy Robert Songer of the Clark County Sheriff's office, in company with Officer Robert Chambers of the Vancouver police and other officers, executed a warrant to search the residence and person of James Delbert Williams for heroin. After gaining entry, the police took the defendant Williams into a bedroom and searched him, finding no contraband. They escorted him into the living room, which they began to search while he sat on the couch. Williams reached for a glass of water on a coffee table. Deputy Songer, experienced in narcotics police work, suspected defendant was about to try to swallow drugs and ordered him not to drink the water and to open his mouth. Testimony conflicts as to whether defendant complied, enabling Songer to see red and yellow balloons he assumed to contain heroin, but the Superior Court entered a finding according to defendant's version that he refused to open his mouth. It is undisputed that Songer used his flashlight to hit Williams' hand away from the water and grabbed defendant's nose and chin to hold his mouth open. Officer Chambers grabbed Williams around the throat to prevent swallowing. The police pinned defendant in this way to the couch and called for a spoon, which was used to extract three balloons of heroin from

Williams' mouth. The court found that 30 to 60 seconds elapsed from the officers' seizure of Williams until the heroin was retrieved. Defendant testified he could not breathe while the officers had him in their grip, although he did not lose consciousness or require medical treatment.

█ Officer Chambers testified Williams was able to breathe despite the grip on his throat, but the Superior Court found that Chambers was choking Williams so that he "could not and/or had extreme difficulty breathing." Although findings of fact are not required in a suppression hearing and are mere surplusage when the testimony does not conflict, *State v. Agee*, 15 Wn. App. 709, 552 P.2d 1084 (1976), if the court elects to enter findings of fact on disputed testimony, we must respect the court's evaluation of the witnesses and accept unchallenged findings as verities. *State v. Howard*, 7 Wn. App. 668, 502 P.2d 1043 (1972). The State has not challenged these findings of fact, and the court's finding of a breathing impairment must stand. In oral argument, the State conceded that substantial evidence existed to support the court's finding that defendant was choked for 30 to 60 seconds.

It is unnecessary for us to consider issues raised by the defendant—for the first time on appeal—concerning whether a warrant to search a person authorizes a search into body cavities; or, if not, whether there was probable cause for Songer to force defendant's mouth open upon seeing him reach for water; or whether this was an impermissible "second search" following completion of a search according to warrant. Our decision turns on an assessment of the police use of force, which the Superior Court in effect held to be excessive.

The generative case articulating the standards for police use of force to extract physical evidence from the body of a nonconsenting suspect is *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R.2d 1396 (1952). In *Rochin*, the police entered the defendant's bedroom and saw him put two capsules into his mouth. Three officers "jumped upon him" and unsuccessfully tried to extract the

capsules. The defendant was taken to a hospital and forced to ingest an emetic solution through a tube. Rochin then vomited up the capsules containing morphine. The Supreme Court characterized the officers' conduct as "brutal" and shocking to its conscience, and held that their method of retrieving the evidence was "too close to the rack and the screw" not to have violated due process of law. *Rochin v. California, supra* at 172-74.

Since the *Rochin* decision, several jurisdictions have applied the restraints of due process of law to examine the means used by police to extract evidence from the mouths of suspects. General principles have evolved from the case law. A suspect has no constitutional right to destroy or dispose of evidence by swallowing, consequently he cannot consider the mouth a "sacred orifice" in which contraband may be irretrievably concealed from the police. *People v. Bracamonte*, 15 Cal. 3d 394, 405 n.6, 540 P.2d 624, 632 n.6, 124 Cal. Rptr. 528 (1975); *People v. Sanders*, 268 Cal. App. 2d 802, 74 Cal. Rptr. 350 (1969); *People v. Bass*, 214 Cal. App. 2d 742, 29 Cal. Rptr. 778 (1963); *Foxall v. State*, 298 N.E. 2d 470 (Ind. App. 1973). The police may use reasonable force to attempt to prevent the swallowing of evidence, *State v. Young*, 15 Wn. App. 581, 550 P.2d 689 (1976); *People v. Bracamonte, supra* at 405 n.6; *People v. Bass, supra*; *State v. Santos*, 101 N.J. Super. 98, 243 A.2d 274 (1968), particularly when a search for evidence is under way pursuant to a warrant, as in this case. *United States v. Harrison*, 432 F.2d 1328 (D.C. Cir. 1970); *Foxall v. State, supra*. The reasonableness of the force used to recover evidence put into the mouth necessarily depends on the facts of each case. *State v. Young, supra.*

At the extreme of unreasonableness there are situations of officers "jumping upon" a suspect and causing his stomach to be pumped against his will, as in *Rochin v. California, supra*, and *People v. Bracamonte, supra*. Likewise, the courts have properly forbidden a "judo choking technique" designed to stop the flow of blood to the head, *People v. Sanders, supra*, and clubbing a suspect on the back of the

neck. *People v. Parham,* 60 Cal. 2d 378, 384 P.2d 1001, 33 Cal. Rptr. 497 (1963). However, a punch to the solar plexus which resulted in the disgorgement of evidence was held permissible because it was necessary to overcome fierce resistance to a valid arrest. *United States v. Mont,* 306 F.2d 412 (2d Cir. 1962).

In a line of California decisions, the police are forbidden to "choke" a suspect to prevent him from swallowing evidence. *E.g., People v. Martinez,* 130 Cal. App. 2d 54, 278 P.2d 26 (1954); *People v. Erickson,* 210 Cal. App. 2d 177, 26 Cal. Rptr. 546 (1962); *People v. Parham, supra; People v. Sanders, supra.* However, other jurisdictions have allowed "choking" or "grabbing" the defendant by the throat. *United States v. Harrison, supra; Espinoza v. United States,* 278 F.2d 802 (5th Cir. 1960); *State v. Santos, supra.*

We subscribe to the view that it is constitutionally reasonable for the police to "place" their hands on a suspect's throat to prevent the swallowing of evidence, as long as they do not "choke" him, *i.e.,* prevent him from breathing or obstruct the blood supply to his head. *Webster's Third New International Dictionary* 396 (1969); *People v. Bass, supra.* In *State v. Young, supra,* Division One of this court reviewed a trial court's finding and oral decision that the policeman had placed his hands on the suspect's throat but had not "choked" him. Although the officer also pinched the suspect's nose shut, he remained able to breathe. The court expressly concluded the defendant had not been choked, and the Court of Appeals agreed that the use of force was reasonable to prevent the destruction or concealment of evidence.

This case differs from *Young.* Here, the defendant was pinned to the couch—one officer's hands pinching his nose and spreading his mouth open, the other officer's hands around his throat, effectively preventing his adam's apple from moving. Williams had extreme difficulty breathing. The balloons were ultimately pried from his mouth with a spoon. The prosecutor has acceded to the court's finding that defendant was indeed choked for 30 to 60 seconds. This

course of conduct was so unnecessarily harsh as to shock the conscience of this court; "choking" off a suspect's air supply is violative of due process of law.

We emphasize that the police should be able to take reasonable measures to prevent the destruction of evidence which they are entitled to possess. Specifically, we believe the constitution permits them to place their hands on a suspect's neck to prevent the swallowing of evidence, or to go further when necessary to overcome active resistance. But Williams did not resist beyond refusing briefly to spit out the drugs. We hold that the police, by choking Williams so he could hardly breathe, exceeded the bounds of reasonableness in these circumstances.

The order suppressing evidence is affirmed.

PETRIE, C.J., concurs.

REED, J. (dissenting)—I must respectfully dissent from this opinion, the result of which is to keep from evidence a probable drug dealer's goodly supply of heroin. In doing so, I fully appreciate the trial judge made specific findings on conflicting testimony that defendant was "choked" so that "[he] could not and/or had extreme difficulty breathing during this 30 to 60 second time period." The officers vehemently denied this, testifying his throat was grasped in such a way that only his swallowing was restricted. Defendant himself admitted he was neither hurt nor even rendered unconscious by the procedure and that all he had to do was spit up the balloons or allow them to be removed from the roof of his mouth.

I realize that we are foreclosed by the trial judge's finding in this regard, but I note the formal findings he ultimately signed, in fixing the exact time during which defendant's breathing was impaired, go far beyond anything he said in orally granting the motion to suppress. Further, in that oral decision he appears to quote two California Supreme Court Justices who were dissenting from that court's refusal to review a decision of the California District Court of Appeals, which had affirmed a superior court

conviction of one Antonio Rochin, *People v. Rochin,* 101 Cal. App. 2d 140, 143, 149, 150, 225 P.2d 1, 913, 917 (1951). *See also Rochin v. California,* 342 U.S. 165, 167, 96 L. Ed. 183, 187, 72 S. Ct. 205, 25 A.L.R.2d 1396 (1952). Based thereon, he concludes there had been an unreasonable search and seizure, saying "We're not going to go in and force a man against his own will to give it up." I believe this evidences a misconception of the law applicable to attempts to destroy evidence and confuses Fifth Amendment considerations with concerns of due process.

As Division One of this court has already made clear in *State v. Young,* 15 Wn. App. 581, 550 P.2d 689 (1976), the use of reasonable force to compel or induce the disgorgement of contraband from a subject's mouth is not proscribed. I do not believe the force resorted to here was unreasonable, nor do I believe that a momentary restriction of the air supply, as in the instant case, presents any real danger of serious bodily harm. I feel safe in that assumption because defendant did not consult a physician and chose not to favor the trial court with any medical testimony to that effect. The burden of producing such testimony was, of course, upon the defendant, and had he come forth with such evidence I would have no hesitation in joining the majority to condemn such a practice. On the contrary, however, defendant appears to have suffered only a momentary discomfort which he could have avoided in the first place or terminated much sooner by simply complying with the lawful demands of the officers. Defendant had absolute control of the situation. If he has any complaints at all it is a classic example of "self-inflicted harm."

If the majority hope by this decision to discourage future violent confrontations between police officers and suspects, a concern expressed in *People v. Bracamonte,* 15 Cal. 3d 394, 540 P.2d 624, 124 Cal. Rptr. 528 (1975), I doubt it will achieve that purpose. On the contrary, I suspect the sanction of suppression will not necessarily deter conscientious officers in their attempts to remove from the marketplace

—all thought of conviction aside—any supply of heroin which comes to their attention as it did in this case. The holding may be taken as an invitation to such drug violators to escape justice by popping contraband into their mouths and then claiming they were "choked." I submit that if we tell them instead that such a device will not work, they will themselves choose to avoid such measures as were taken here.

As stated in *State v. Young, supra,* what is reasonable or unreasonable force should depend upon the facts of each case. Here the police were faced with no spur of the moment attempt by a teen-aged experimenter to rid himself of one or two capsules of a fairly innocuous, though illegally possessed, substance. Rather, it was a resort to a common practice among heroin dealers by an individual the officers had probable cause to believe was peddling heroin.[1] Neither do I see the police conduct here as at all approaching that which was involved and condemned in *Rochin v. California, supra.* Again I stress that, except for some minor discomfort, the defendant emerged from the encounter completely unscathed.

Finally, I continue to find unpalatable the application of the exclusionary rule as a remedy for what this court has found to be an invasion of defendant's constitutional rights[2] —yet another case of penalizing the innocent public for the "constable's blunder." While necessarily constrained by higher authority to continued use of this sanction, I confess I share Chief Justice Burger's views as to its continued value and efficacy except in a few selected cases, as expressed in his concurring opinion in *Stone v. Powell,* 428 U.S. 465, 496-97, 49 L. Ed. 2d 1067, 1089, 96 S. Ct. 3037 (1976):

In evaluating the exclusionary rule, it is important to

[1]The affidavit for search warrant describes several instances in which defendant possessed substantial numbers of heroin-filled balloons and of his offers to sell them. It is, I believe, common knowledge the substance is kept in balloons so it can be disposed of by swallowing, hopefully without ill effect.

[2]The trial court suppressed the heroin as the fruits of an unconstitutional search, whereas this court's opinion condemns the police action as a deprivation of defendant's right to due process.

bear in mind exactly what the rule accomplishes. Its function is simple—the exclusion of truth from the fact-finding process. . . . The operation of the rule is therefore unlike that of the Fifth Amendment's protection against compelled self-incrimination. A confession produced after intimidating or coercive interrogation is inherently dubious. If a suspect's will has been over-borne, a cloud hangs over his custodial admissions; the exclusion of such statements is based essentially on their lack of reliability. This is not the case as to *reliable* evidence—a pistol, a packet of heroin, counterfeit money, or the body of a murder victim—which may be judicially declared to be the result of an "unreasonable" search. The reliability of such evidence is beyond question; its probative value is certain.

(Citation omitted.) I share also Justice Burger's concern that

Legislatures are unlikely to create statutory alternatives, or impose direct sanctions on errant police officers or on the public treasury by way of tort actions, so long as persons who commit serious crimes continue to reap the enormous and undeserved benefits of the exclusionary rule. And of course, by definition the direct beneficiaries of this rule can be none but persons guilty of crimes.

*Stone v. Powell, supra* at 500-01.

If, in fact, police officers are found in a given case to have exceeded reasonable force to the point of brutality and thus, to have committed an assault upon a suspect, I submit he has a ready made remedy—a suit for damages. To those who would suggest that the remedy is merely illusory because convicted heroin possessors and dealers will not find a sympathetic jury, I can only answer "he has himself to blame." I would reverse.

Petition for rehearing denied March 11, 1977.

Review denied by Supreme Court July 27, 1977.