STATE of Utah, Plaintiff and Appellee,

v.

Dennis M. HODSON, Defendant and Appellant.

No. 910722–CA.

Court of Appeals of Utah.

Nov. 30, 1993.

Elizabeth Holbrook, Salt Lake Legal Defenders Ass'n (argued), Salt Lake City, for defendant-appellant.

Jan Graham, State Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff-appellee.

Before BILLINGS, GREENWOOD, and GARFF, JJ.[1]

## OPINION

GREENWOOD, Judge:

Defendant Dennis M. Hodson appeals his conviction for unlawfully distributing or arranging to distribute a controlled substance, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1990), and for unlawful possession of a controlled substance with intent to distribute, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (1990). Defendant claims the trial court erred in denying his motion to suppress evidence seized in an unreasonable, warrantless body search. We remand for the entry of additional findings.

## FACTS

On July 12, 1991, Janet Wardle, a police informant, met with defendant to purchase heroin. Wardle had been arrested the day before, on July 11, 1991, at the Greyhound bus station in Salt Lake City, while attempting to send a package containing heroin through the United States mail. As part of a plea bargain arrangement, Wardle agreed to cooperate with police by participating in a controlled drug buy.

After completing her transaction with defendant, Wardle gave a prearranged signal to drug enforcement agents Smith and Garcia. The agents then approached defendant's vehicle with their overhead flashers on. Agent

Smith testified at trial that as the police car neared defendant's vehicle, defendant "threw" something in his mouth. Smith alerted agent Garcia to defendant's action, and the two agents exited their vehicle. Garcia grabbed defendant "by the cheeks" while he was still sitting in the driver's seat, put a gun to the side of his head, and ordered defendant to "spit it out." Garcia then put his gun down on the top of defendant's car, Smith opened the car door, and Garcia pulled defendant out of the car and onto the ground. Garcia's arm was wrapped around defendant's neck, and he again ordered defendant to spit out whatever he had in his mouth. Defendant spat out three plastic wrapped chips, and Garcia retrieved additional chips by inserting his fingers in defendant's mouth and pulling them out. A total of eight chips, later identified as black tar heroin, were recovered from defendant.

Defendant filed a motion to suppress the evidence obtained by Smith and Garcia, claiming that the agents conducted an unreasonable and therefore unconstitutional warrantless search. The trial court denied the motion, reasoning:

> In this case, [the officers] could have kept the defendant in isolation but the evidence of the drug ingestion could have been destroyed, the amounts could have been altered by his stomach acids and there was the potential that it could have been lethal to him. Under the circumstances of this case, I find that the search by the officers was appropriate and, therefore, deny [the] motion to suppress.

Defendant renewed the motion to suppress at the bench trial that followed, and it was again denied.

In the course of the bench trial, the prosecution called Wardle to the stand to testify about the controlled drug buy. Because Wardle's participation in the drug buy on July 12, 1991 was related to her arrest on the previous day, and because she was due to stand trial for this arrest, Wardle attempted to invoke the Fifth Amendment to protect

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

herself against self-incrimination. The court ruled that the Fifth Amendment had no application to the events on July 12, 1991 because Wardle faced no criminal liability in connection with these events. As for Wardle's potential testimony concerning the events of July 11, 1991, the court ruled that testimony could be admitted to reflect on Wardle's credibility, but not "for the purpose of establishing the truth of the matter asserted in relation to the criminal charges on the 11th."

■ At the conclusion of the bench trial, the court found defendant guilty as charged. Defendant appeals, claiming that his motion to suppress should have been granted and that it was error to admit Wardle's testimony into evidence after she had properly invoked the Fifth Amendment with respect to the events of July 12, 1991.[2] We do not reach the argument concerning the Fifth Amendment because it was not properly preserved for appeal. Defendant did not object to the trial court's ruling, but, in fact, concurred with the court that the Fifth Amendment had no relevance in the context of defendant's trial. "Generally, a defendant who fails to bring an issue before the trial court is barred from asserting it initially on appeal. Utah's appellate courts have applied this rule to constitutional questions advanced for the first time on appeal."[3]  *State v. Archambeau*, 820 P.2d 920, 922 (Utah App.1991) (footnotes omitted).

## STANDARD OF REVIEW

■ In reviewing the denial of a motion to suppress, we uphold the trial court's findings of fact unless they are clearly erroneous and "review the trial court's conclusions of law based thereon for correctness." *State v. Gray*, 851 P.2d 1217, 1220 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993).

## ANALYSIS

■ Defendant argues that the removal of the eight chips of black tar heroin from his mouth violated his fourth amendment[4] right to be free of unreasonable, warrantless searches and seizures.[5] He claims that: (1) the agents had no way of knowing that the substance he threw in his mouth was contraband; (2) agent Garcia impermissibly choked defendant to force him to spit out the heroin; and (3) agent Garcia used excessive and unreasonable force when he held a loaded gun to defendant's head.

■ Because this was a warrantless search and seizure, the State has "the burden

2. Defendant also claims that permitting Wardle to partially invoke the Fifth Amendment with respect to the events of July 11, 1991 denied him his sixth amendment right to confrontation. We find this argument to be without merit. Review of the record reveals that the trial court only excluded four questions requested by defense counsel. These concerned whether Wardle used the United States mail to mail heroin on the 11th, whether she used the Greyhound Bus Services to transport the heroin, whether the heroin was being sent to a source in another state, and whether the heroin Wardle sometimes kept in her purse was for personal use. The trial court properly excluded these questions due to their incriminating nature, their very limited relevance, and the fact that this testimony would be unnecessarily cumulative. *See United States v. DeSoto*, 950 F.2d 626, 629–30 (10th Cir.1991).

3. Further, even if defendant's appeal on this issue were timely, defendant has no standing to raise violations of Wardle's fifth amendment rights because the right against self-incrimination is personal. *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir.1988).

4. Defendant also alleges violation of his state constitutional rights. However, because defen-

dant did not provide independent state constitutional analysis, we will not reach these issues. *State v. Archambeau*, 820 P.2d 920, 927 n. 13 (Utah App.1991) (citations omitted).

5. Defendant also argues that the seizure violated his fourteenth amendment right to due process of law. The Supreme Court has rejected this approach, holding:

*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (footnote omitted).

of showing that the search was lawful." *State v. Palmer*, 803 P.2d 1249, 1251 (Utah App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991). In order to meet this burden in the case of a bodily search, the State must establish three elements: (1) a clear indication that evidence would be found; (2) exigent circumstances that justified the warrantless bodily intrusion; and (3) that the method chosen was a reasonable one, performed in a reasonable manner. *Schmerber v. California*, 384 U.S. 757, 768–72, 86 S.Ct. 1826, 1834–36, 16 L.Ed.2d 908 (1966).

After review of the record, particularly the undisputed facts, we determine that the first two *Schmerber* elements are satisfied as discussed below. However, we are unable to evaluate the third element, reasonableness, as it relates to the alleged "choking" of defendant, due to the absence of crucial factual findings. We therefore remand for additional findings and provide a legal framework as guidance for the trial court.

## Clear Indication of Evidence

The first prong of the *Schmerber* test requires the State to establish that at the time of the challenged search and seizure, the officers had a "clear indication that in fact ... evidence [would] be found." *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835. "Clear indication" requires that there be probable cause to believe that evidence will be found. *Id.; Winston v. Lee*, 470 U.S. 753, 759, 105 S.Ct. 1611, 1615–16, 84 L.Ed.2d 662 (1985). "The determination of whether probable cause exists ... depends upon an examination of all the information available to the searching officer in light of the circumstances as they existed at the time the search was made." *State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986). "The validity of the probable cause determination is made from the objective standpoint of a 'prudent, reasonable, cautious police officer ... guided by his experience and training.'" *Id.* (quoting *United States v. Davis*, 458 F.2d 819, 821 (D.C.Cir. 1972)). In making that determination, "a police officer is entitled to rely on information gained from other police officers." *Id.*

Defendant argues that the officers did not have probable cause to believe that he was preparing to swallow illegal drugs. He contends that it is just as likely that he had put chewing gum, breath mints, aspirin, chewing tobacco, or food in his mouth. While defendant correctly states that a mere "furtive gesture" is inadequate to establish probable cause, " 'deliberately furtive actions and flight at the approach of ... law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.' " *People v. Superior Court of Yolo County*, 3 Cal.3d 807, 91 Cal.Rptr. 729, 735, 478 P.2d 449, 455 (1970) (quoting *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968)); *see also State v. Victor*, 76 Ohio App.3d 372, 601 N.E.2d 648, 650–51 (1991) ("[D]efendant's suspicious movements, which occurred immediately after the detectives revealed their identity as police officers, gave rise to a reasonable inference that defendant did, in fact, possess drugs which he attempted to secrete in his mouth."), *cert. denied*, 63 Ohio St.3d 1455, 590 N.E.2d 750 *cert. denied*, —— U.S. ——, 113 S.Ct. 292, 121 L.Ed.2d 217 (1992).

In this case, the following facts, as found by the trial court, support probable cause: (1) Wardle had agreed to arrange to purchase heroin from defendant; (2) Wardle gave a prearranged signal indicating the drug transaction was completed; and (3) agent Smith told agent Garcia that defendant had "thrown" something into his mouth when the officers approached with their lights flashing. Further, a reasonable officer would know that it is a common practice among drug dealers to swallow the evidence if the police arrive on the scene. Defendant's furtive gesture of putting something in his mouth as the officers approached, coupled with the agents' specific knowledge that Wardle intended to purchase illegal drugs from defendant provided a clear indication that evidence would be found in defendant's mouth. Thus, there was probable cause.[6]

6. Although the trial court did not state specifical-

ly that the officers had probable cause, the undis-

## Exigent Circumstances

The State must establish exigent circumstances justifying a warrantless search by showing "either that the procurement of a warrant would have jeopardized the safety of the police officers or the public, or that the evidence was likely to have been lost or destroyed." *State v. Palmer*, 803 P.2d 1249, 1252 (Utah App.1990) (citation omitted) (stating that warrantless searches are only permitted to protect safety of police or public or to prevent destruction of evidence), *cert. denied*, 815 P.2d 241 (Utah 1991); *see also Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969).

With respect to the second exigent circumstances exception, the Utah Supreme Court has said that "the police must ... believe that ... either contraband or evidence of a crime ... may be lost if not immediately seized." *State v. Larocco*, 794 P.2d 460, 470 (Utah 1990) (citing *State v. Christensen*, 676 P.2d 408, 411 (Utah 1984)). Defendant claims that this exception is not present in his case because the police had no knowledge concerning how the heroin was wrapped or whether it would travel safely through his system. Defendant argues that his circumstances are analogous to those in *Palmer* in which this court found that there were no exigent circumstances to justify an X-ray search for a swallowed diamond ring because "[t]here was no justifiable reason to believe the ring would be destroyed by [passing through defendant's body]." *Palmer*, 803 P.2d at 1253; *see also People v. Bracamonte*, 15 Cal.3d 394, 124 Cal.Rptr. 528, 535, 540 P.2d 624, 631 (1975).

*Palmer* can be easily distinguished from the instant case. In *Palmer*, the defendant swallowed an item that would not be affected by its passage through defendant's body. In this case, the agents did not know how the heroin was packaged, and there was the possibility, as the trial court observed, that "the evidence of the drug ingestion could have been destroyed, the amounts could have been altered by his stomach acids and there was

the potential that it could have been lethal to him." *See also People v. Cappellia*, 208 Cal. App.3d 1331, 256 Cal.Rptr. 695, 700 (1989) ("The fact the bindles turned out to be sealed instead of just twisted closed does not diminish the reasonableness of the officer's belief at the time the arrest was being made. No one can know for sure what the precise effect will be when packaged drugs are swallowed."); *Bracamonte*, 540 P.2d at 631 ("If ... there was reasonable cause to believe that the balloons [filled with heroin] would not pass through the digestive tract but instead would break open and thereby dissipate, not only would the potential health hazard possibly justify the intrusion into defendant's stomach, but the fear of the destruction of evidence might also justify remedial action."). When illegal drugs are ingested to conceal them from law enforcement, a reasonable police officer cannot know, for certain, the method of packaging the drug. As a result, it is not unreasonable to assume the drug might not be securely packaged so as to avoid its dissipation in the ingester's system, with resulting probable toxic effects. Therefore, contrary to defendant's assertion, it is precisely *because* the police did not know how the heroin was packaged that exigent circumstances justified a warrantless search and seizure. The exigencies in this case included both possible destruction of evidence and potential harm to defendant. As a result, there was no error in the trial court's finding of exigent circumstances.

## Reasonableness

The third prong of the *Schmerber* test requires that the method chosen to retrieve the evidence be reasonable, and that the search be carried out in a reasonable manner. Whether the search was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (citation omitted). However, the officer's actions must be

puted facts described support such a conclusion. *See State v. Ramirez*, 817 P.2d 774, 787 (Utah 1991).

" 'objectively reasonable' in light of the facts and circumstances confronting [him or her], without regard to ... underlying intent or motivation." *Id.* at 398, 109 S.Ct. at 1872. Defendant alleges that the police utilized two separate, unreasonable methods to recover the heroin chips from his mouth. Defendant first claims that agent Garcia used impermissible force by choking him in order to force him to give up the heroin, and second, that Garcia used excessive and unreasonable force by holding a loaded gun to defendant's head.

At the pretrial hearing on the motion to suppress, the trial court held that the methods Garcia used to obtain the evidence were "appropriate" given the fact that the evidence could have been destroyed or altered if defendant swallowed it and that ingesting the heroin could be lethal to defendant. However, the parties did not present any actual testimony to the trial court, claiming to have stipulated to the pertinent facts. Nonetheless, the memoranda provided to the court in connection with the motion to suppress did not contain stipulated facts; rather, they set forth significantly different accounts of Garcia's actions. Defendant claimed that Garcia threatened to shoot him if he did not spit out the heroin, whereas the State simply conceded that Garcia held a gun to defendant's head. Defendant characterized Garcia's actions while holding him down on the ground as "choking," while the State said at some points in the memorandum that Garcia "choked" defendant and at others that he prevented him from swallowing. Therefore, although the trial court ruled that Garcia's actions were reasonable, it made no findings as to precisely what those actions were, and, indeed, given the contradictory memoranda and lack of actual testimony, such findings would have been difficult.

"[T]he issues presented in search and seizure cases are highly fact sensitive.... Thus, detailed findings are necessary to enable this court to meaningfully review the issues on appeal." *State v. Lovegren,* 798 P.2d 767, 770 (Utah App.1990). Under Rule 12(c) of the Utah Rules of Criminal Procedure, "[w]here factual issues are involved in determining a motion, the court shall state its findings on the record." Utah R.Crim.P. 12(c). In a case such as this one, where the facts are not stated on the record, we may nonetheless affirm the trial court's decision " 'if from the evidence it would be reasonable to find facts to support it.' " *State v. Ramirez,* 817 P.2d 774, 787 (Utah 1991) (quoting *Mower v. McCarthy,* 122 Utah 1, 6, 245 P.2d 224, 226 (1952)). "If the ambiguity of the facts makes this assumption unreasonable, however, we remand for a new trial." *Id.*

The only testimony at trial concerning Garcia's methods was provided by Smith who described him as "choking" defendant to get him to spit out the heroin chips. Smith did not elaborate on what she meant by "choking," and it is not clear from the context of her testimony how she intended that term to be understood.

There are no Utah cases that discuss the reasonableness of "choking" an individual to obtain evidence. However, this issue has been addressed by many other jurisdictions. The approaches of other jurisdictions create a spectrum that ranges from (1) permitting choking generically, *Espinoza v. United States,* 278 F.2d 802 (5th Cir.), *cert. denied,* 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed.2d 55 (1960); *State v. Santos,* 101 N.J.Super. 98, 243 A.2d 274 (App.Div.1968); *Hernandez v. State,* 548 S.W.2d 904 (Tex.Crim.App.1977); *see also State v. Thompson,* 244 Neb. 189, 505 N.W.2d 673 (1993) (upholding use of a "lateral vascular neck restraint" to obtain evidence); to (2) permitting placement of the hands on the neck to prevent an individual from swallowing the evidence, as long as it does not cut off air or blood to the brain, *People v. Cappellia,* 208 Cal.App.3d 1331, 256 Cal.Rptr. 695 (1989); *State v. Desmond,* 593 So.2d 965 (La.App.), *writ denied,* 600 So.2d 637 (La.1992); *State v. Williams,* 16 Wash. App. 868, 560 P.2d 1160, 1163 (1977); and, finally, to (3) opposing any type of pressure on the neck, *People v. Jones,* 209 Cal.App.3d 725, 257 Cal.Rptr. 500 (1989).

■ In determining appropriate guidelines for police officers concerning the degree of force they may employ to obtain evidence, we look to the three factor balancing test set forth in *Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). These factors are: (1) the extent to which the pro-

cedure utilized may threaten the safety or health of the individual; (2) the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (3) the community's interest in fairly and accurately determining guilt or innocence. *Id.* at 761–62, 105 S.Ct. at 1617–18.

■ After review of the facts in cases upholding almost any degree of "choking," we have determined that the potential of serious harm inherent in cutting off an individual's air or blood supply exceeds the value to the community of obtaining evidence. However, to adopt the diametrically opposed position preventing police officers from taking any immediate action when an individual is about to swallow drugs would disregard both the safety of the individual and the community's interest in law enforcement. Therefore, we adopt a standard representing the middle ground between these positions and hold that "it is constitutionally reasonable for the police to 'place' their hands on a suspect's throat to prevent the swallowing of evidence, as long as they do not 'choke' him [or her], i.e., prevent him [or her] from breathing or obstruct the blood supply to [the] head." *Williams,* 560 P.2d at 1163.

In adopting this standard, we note that it involves minimal threats to an individual's safety or health. *See Cappellia,* 256 Cal. Rptr. at 699 ("Placing ... hands around defendant's throat[ ] neither impaired defendant's breathing nor caused him to gasp, choke, or cry out in pain."); *State v. Winfrey,* 359 So.2d 73, 77 (La.1978) (finding that defendant suffered no injuries due to hold that merely prevented him from swallowing). Furthermore, it does not seriously intrude upon an individual's dignitary interests in personal privacy and bodily integrity. We agree with the *Cappellia* court that

> "it makes little sense to say that the minimal pressure necessary to prevent swallowing is excessive, particularly when it is considered that if the drugs are swallowed the defendant may be harmed by them and may have to submit to an even more disagreeable procedure for his own protection or for retrieval of the evidence."

*Cappellia,* 256 Cal.Rptr. at 699–700 (quoting 2 Wayne R. LaFave, *Search and Seizure* § 5.2(i), at 473 (2d ed. 1987)). Having adopted this standard, however, we are unable to tell from the trial court's findings or the record whether Garcia's hold on defendant's neck complied with the standard or exceeded it by cutting off defendant's air or blood supply. Therefore, we must remand for further factual findings on that issue.

The second question of reasonableness concerns Garcia's placement of a loaded gun to defendant's head to enforce compliance with his demands that defendant spit out the heroin. In support of his position, defendant cites *People v. Allen,* 86 Cal.App.3d 948, 150 Cal.Rptr. 568 (1978), in which the court found that it was unreasonable to threaten to "blow [Allen's] head off" in order to prevent him from swallowing five balloons of heroin. *Id.* 150 Cal.Rptr. at 570. However, in this case, the only testimony at trial concerning what Garcia said was provided by Smith, and she testified that Garcia did *not* threaten to kill defendant. Therefore, there is no evidence in the record before us that Garcia threatened to shoot defendant if he did not spit out the drugs. Further, the court in *Allen* expressly reserved judgment about situations involving possible destruction of the evidence. *Id.* at 571.

■ The facts of the instant case fall within the exception described in *Allen.* Destruction of the evidence appeared to be imminent, and the officers were unable to determine whether the drugs were packaged in such a way that they would not harm or even kill defendant while passing through his system. Furthermore, there was no stated threat to shoot in this case and Garcia quickly put the gun down, alleviating any implied threat. It is true that use of a loaded gun does involve some risks to defendant's safety and does intrude upon defendant's dignitary interests. However, after weighing these factors against the community's interest in obtaining evidence, and in protecting defendant from the ill effects of swallowing drugs, we conclude that in the absence of an express threat to kill defendant, Garcia's action constituted a reasonable response to a crisis situation.

## CONCLUSION

The trial court has not set forth factual findings in sufficient detail for this court to conduct a meaningful review of the validity of the warrantless bodily search and seizure of defendant. We therefore remand for factual findings concerning whether Garcia cut off defendant's air or blood supply or merely prevented him from swallowing. If the trial court concludes that defendant was impermissibly choked, he is entitled to a new trial at which the evidence must be suppressed. Defendant's second claim of unreasonable search and seizure, based upon the use of a gun in an attempt to obtain evidence, fails given the factual circumstances of this case.

BILLINGS and GARFF, JJ., concur.